Fred J. MAYO, Petitioner,

v.

UNITED STATES of America, Respondent.

Civ. No. 74–251–E.

United States District Court, E. D. Illinois.

Jan. 11, 1977.

Fred J. Mayo, pro se.

Timothy J. Gifford, Asst. U.S. Atty., East St. Louis, Ill., Walter Schroeder, Asst. U.S. Atty., Belleville, Ill., for respondent.

## ORDER

FOREMAN, District Judge:

Fred Mayo, convicted of interstate transportation of forged securities on April 5, 1973, has filed with this Court seeking the return of a printing press and various other goods confiscated by Federal Bureau of Investigation Agents in 1972, or, in the alternative, monetary damages to the extent of the property's value. Because Rule 41(e), Fed.R.Crim.P., requires such petitions to be heard in the district where the property was seized, this Court held a hearing on

Mayo's petition at the United States Penitentiary at Marion, Illinois.

## I

On August 21, 1972 Special Agent Fred Graper of the Federal Bureau of Investigation arrived at a house trailer rented by Mayo in Jonesboro, Illinois. Acting without a search warrant, but with the consent of Mayo's landlord, Graper entered the trailer, searching it and the area outside it. Various items were taken during the search including a typewriter, various printing supplies, and a printing press, which is the subject of this action.[1] The press was apparently found underneath a flight of steps leading to the trailer's front door, but it appears that the press was not in plain view of Agent Graper.

Mayo was subsequently charged in a five-count indictment with transporting forged securities in interstate commerce, a violation of 18 U.S.C. § 2314.[2] Trial on these charges was held in United States District Court for the Southern District of Indiana before the Honorable Cole Holder. A verdict of guilty was returned on each count, and Mayo was sentenced to ten years imprisonment for each violation, with all sentences to be served concurrently.

During the trial, Judge Holder ruled that Mayo's printing press was the fruit of an illegal search and seizure, and was therefore inadmissible as evidence at Mayo's trial. Relying on this order, Mayo filed a petition styled as a writ of replevin in Judge Holder's court. This petition, filed in October, 1973, sought return of the press, but it was dismissed for procedural defects and improper venue in May, 1974.

Late in 1974, Mayo filed a petition in this Court seeking return of his press or money damages to the extent of its value. This petition, also styled as a writ of replevin, was earlier construed by this Court to be a motion under Rule 41(e), Fed.R.Crim.P., for the return of illegally seized property. See *Mayo v. United States*, 413 F.Supp. 160, (E.D.Ill.1976). The United States has answered the motion, asserting the following affirmative defenses: (1) Mayo's claims are moot because all of the seized property has been returned to him or destroyed;[3] (2) Mayo's claim for money damages may only be asserted under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. (1970); and (3) because Mayo has failed to exhaust his administrative remedies as required by the act, 28 U.S.C. § 2675, this Court is currently without jurisdiction to rule on Mayo's claims.

It is worth noting at this point that although the press was destroyed "on or about September 17, 1973," this Court was not apprised of the destruction until May, 1976. The Court also notes that no evidence was adduced at the June 21, 1976 hearing to show that the press was used in a prohibited manner that would subject it to forfeiture. There is also no evidence that a forfeiture hearing was held prior to destruction. See *United States v. Three Thousand Two Hundred Thirty-Six Dollars*, 167 F.Supp. 495 (D.Alaska 1958).

## II

Before proceeding to the central issue presented by this case, it is necessary to dispose of two preliminary questions. First, this Court must decide whether Judge Holder's ruling on the legality of the Jonesboro search is binding on this action. Second, it must be decided whether destruction of the press was legally permissible; if it was, neither Rule 41(e) nor the Tort Claims Act entitle Mayo to relief.

█ This Court has concluded that Judge Holder's suppression order may not be reconsidered in this case. Other cases hold that a second hearing of a motion to sup-

---

1. It is stipulated that the typewriter was returned.

2. The government has stipulated that Mayo was not convicted of counterfeiting.

3. The government states:

   Upon information and belief, the respondent states that . . . the printing press, type, paper and ink were destroyed as contraband on or about September 17, 1973.

press evidence is not warranted absent exceptional circumstances. *United States v. Greeley*, 138 U.S.App.D.C. 161, 425 F.2d 592 (1970); *McRae v. United States*, 137 U.S. App.D.C. 80, 420 F.2d 1283 (1969). This is especially true where, as here, the suppression order is made by the trial judge in light of all the evidence and testimony presented at trial. Accordingly, this Court will refuse to reopen the determination, made as it was by a judge of coordinate jurisdiction, that the search of Mayo's trailer and seizure of property found there was illegal. See *United States v. Koenig*, 290 F.2d 166 (5th Cir. 1961); *United States v. Wheeler*, 256 F.2d 745 (3rd Cir. 1958).

With respect to the destruction of Mayo's printing press, the burden is on the United States to prove by a preponderance of the evidence that the press was used in a manner that would subject it to forfeiture. See *United States v. Three Thousand Two Hundred Thirty-Six Dollars*, 167 F.Supp. 495 (D.Alaska 1958). This burden may be sustained by showing in a forfeiture proceeding that the press was actually used to counterfeit money or government securities. *United States v. One Chief 1722 Offset Press*, 129 F.Supp. 276 (D.Mass.1955). It may also be sustained by showing that the owner was convicted of counterfeiting.[4]

In this case, the parties have stipulated that Mayo, though convicted of interstate transportation of forged securities, was not convicted of counterfeiting. No evidence of other convictions involving counterfeiting has been adduced. There has been no evidence adduced to show that a libel in rem was brought by the government against the press and no evidence to show that the press was used to produce forged securities. Petitioner did not admit that he had used the press for illegal purposes. The fact that Mayo has been convicted of an offense involved forged securities and the location of the press under the porch was the only evidence introduced to show illegal use. Though giving rise to adverse inferences, these two factors are not enough to meet the government's burden of showing illegal use. Because the government has not met its burden, the Court therefore concludes that Mayo's press was illegally destroyed.

### III

The Court now turns to the root issue presented by the case as it now stands: Will Rule 41(e) support a claim for money damages for illegally seized and destroyed property? Rule 41(e) provides that "a person aggrieved by an unlawful search and seizure may move the district court . . . for the return of the property." The rule does not specifically provide a remedy where the property is no longer in existence and the Court has found no cases construing this rule to allow money damages.

District Court jurisdiction under Rule 41(e) is supervisory in nature and derives from the inherent authority of Courts over those who are its officers. See, e. g., *Go-Bart Importing Co. v. United States*, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931); *Richey v. Smith*, 515 F.2d 1239 (5th Cir. 1975); *Hunsucker v. Phinney*, 497 F.2d 29 (5th Cir. 1974). This supervisory jurisdiction must be exercised with some caution, however, because it is not based on express Congressional authorization, *Grant v. United States*, 282 F.2d 165 (2d Cir. 1960); because it may be exercised when the jurisdictional amount of 28 U.S.C. § 1331 is not satisfied, *id.*; and because the United States, as sovereign, may be sued and enjoined under Rule 41(e) even when it has not consented to be sued. *Lord v. Kelley*, 223 F.Supp. 684 (D.Mass.1963) (Wyzanski, J.). Thus, the general rule with respect to Rule 41(e) jurisdiction is that courts should exercise their unique powers under the Rule sparingly and with an eye to equitable principles.

This Court after examining Rule 41(e), Fed.R.Crim.P. and the case law construing it is of the opinion that Rule 41(e) will not support petitioner's claim for money damages. First, the language of the

---

4.  See 18 U.S.C. §§ 471 et seq., 331–33, 335, 336, 642, 1720 (1970).

rule does not specifically provide for such a remedy but only states that the property unlawfully seized may be returned. Secondly, pursuant to traditional equity notions, equity will not intervene where an adequate remedy at law exists. In the present case, an adequate remedy at law existed, the Federal Tort Claims Act, 28 U.S.C. § 2671. Finally, *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946) and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) are inapposite for the reason that there petitioners sought recovery "squarely on the ground that respondents violated the Fourth and Fifth Amendments". *Bell v. Hood*, supra, 327 U.S. at 681, 66 S.Ct. at 775, whereas here Mayo did not claim damages for the act of violating his constitutional rights but merely sought the return of his property[5], or in the alternative its monetary value.[6] Also, unlike *Bivens* and *Bell*, petitioner here has named the United States Government as party respondent, rather than individuals. For these reasons, notwithstanding sympathy for petitioner's plight, the Court concludes that money damages is not available pursuant to Rule 41(e) and must therefore deny relief.

Even if the lawsuit were construed as an action filed pursuant to the Federal Tort Claims Act, petitioner could not recover money damages. Under the Federal Tort Claims Act, 28 U.S.C. § 2675, an individual cannot bring an action without first presenting the claim to the appropriate federal agency. The claim must then be "finally denied by the agency in writing and sent by registered or certified mail".

In the present case, there is an allegation in the original pleading that a letter was written on July 16, 1974 to Special Agent Graper requesting return of petitioner's property and that the letter was never answered. In a January 31, 1975 pleading petitioner alleges that he wrote another letter to Clarence M. Kelley, Director, Federal Bureau of Investigation again requesting the return of his property. Neither letter apparently contained a claim for money damages. Absent a specific claim for money damages, these letters were not a presentation of plaintiff's claim to the appropriate government agency as required by 28 U.S.C. § 2675(a). See *Best Bearings Co. v. United States,* 463 F.2d 1177 (7th Cir. 1972); *Avil v. United States,* 461 F.2d 1090 (9th Cir. 1972). Moreover, it is unclear even whether Graper or Kelley were the proper individuals to whom the administrative request should have been made. Because petitioner failed to show compliance with this jurisdictional requirement, the Court has no jurisdiction pursuant to the Federal Tort Claims Act.

For the foregoing reasons judgment is entered for the United States of America and against Fred J. Mayo.

IT IS SO ORDERED.

---

**5.** His complaint is styled "Writ of Replevin".

**6.** See also, *Jarvis Piphus and Geneva Piphus v. John D. Carey,* 545 F.2d 30 (7th Cir. 1976).