**UNITED STATES of America**

v.

**Salvatore Ignatius TOTARO.**

**Crim. No. M–75–0183.**

United States District Court,
D. Maryland.

June 13, 1979.

Russell T. Baker, Jr., U.S. Atty., and Donald H. Feige, Asst. U. S. Atty., Baltimore, Md., for plaintiff.

Salvatore Ignatius Totaro, defendant pro se.

## MEMORANDUM

JAMES R. MILLER, Jr., District Judge.

In a memorandum of March 19, 1979, 468 F.Supp. 1045, this court held that it had ancillary jurisdiction over a post conviction motion filed in the above captioned criminal case for the return of seized property. The parties were directed to submit affidavits on the subject of the total amount of money seized from the defendant and the ownership or right to possession of such money (Paper 58). Subsequently, defendant (Totaro) and the USA both filed affidavits.

Totaro's affidavit asserts that at the time of his arrest he had on his person cash in an amount in excess of $1,000 as well as a sealed white envelope containing a sum of money which he later learned to be in the amount of $400.00. His affidavit further asserts that $980.00 in cash was seized during the search of his residence. The defendant's affidavit goes on to state that the cash found on his person and at his residence was his personal property; that he is entitled to possession by right of ownership; and that "[a]ll monies and property presently in the possession of Federal Agents are the personal property of [defendant]". Finally, his affidavit refers to portions of the trial transcripts in two other criminal cases in which he testified to his habit of always carrying large sums of money.

The USA has filed three affidavits with supporting exhibits accompanied by a short memorandum in support of its contentions (1) that defendant has no entitlement to the funds because they were evidence and fruits of a bank robbery for which he stands convicted and (2) that the Government no longer has possession and control of these funds.

The affidavits submitted by the USA are by two FBI agents and a former FBI agent. The affidavits seek to establish that at the time of defendant's arrest $59.00 in loose currency and $300.00 in a white envelope were seized from defendant Totaro and that $980.00 cash was seized during the search of the residence. Two twenty dollar bills from the white envelope had serial numbers corresponding with two of the "bait bills" taken during the bank robbery and were introduced in evidence at the bank robbery trial.

Finally the affidavit of former FBI Agent Donald L. Scott asserts that after all the appeals from the bank robbery convic-

tions were concluded and after obtaining authorization from an Assistant United States Attorney, he turned over to the vice president of the bank which had been robbed all the funds seized from defendant Totaro, and from his co-defendant and the searched residence. Agent Scott's affidavit states that the total amount he turned over to the bank was $1,437.00 [1] whereas the total amount lost by the bank in the robbery for which defendant was convicted was $15,487.95.

The exhibits supporting the USA's affidavits include a receipt, signed by the vice president of the bank and witnessed by two FBI Agents, certifying that on August 15, 1978 $1,437.00 in cash was received by him from FBI Agent Scott. Also submitted as exhibits to the affidavits are copies of the FBI Agents' inventories of the property seized from defendants and the searched residence.

Turning initially to the Government's argument that defendant is not entitled to possession because the funds were evidence and fruits of the bank robbery for which he was convicted, the court is unable to accept this argument. First, except for the two twenty dollar "bait" bills,[2] none of the money was introduced in evidence at the robbery trial and there has been no showing that any of the money seized was the property of the bank. The bank has not made any third-party claim of ownership or perfected any claim against the money as security for a civil judgment.

The U.S. Court of Appeals for the Ninth Circuit was faced with similar facts in *United States v. Palmer*, 565 F.2d 1063 (9th Cir. 1977) except that in that case all the seized money had been introduced in evidence at the trial and it had not yet been turned over to the victim bank. In *Palmer*, the Government opposed the convicted bank robbery defendant's post-conviction motion for return of the seized cash. The Government argued that since the money had been

received in evidence as a Government exhibit, the money should be returned to it as the offering party and that thereafter the Government should be permitted to turn the money over to the victim bank.

Judge Merrill, for the court, concluded that in the absence of any cognizable claim of ownership or right to possession adverse to that of the defendant, the money seized should have been returned to the defendant. In rejecting the Government's argument, Judge Merrill stated:

"The Government makes no claim of ownership by virtue of forfeiture or otherwise. There was no evidence that the money was the property of the bank, although the government in brief and argument persists in referring to it as "bank loot". The bank that was the victim of the robbery made no third-party claim of ownership. Nor has it perfected any claim against the money as security for a civil judgment being sought in another forum.

Thus, no dispute as to ownership has been tendered to the court for resolution or interpleader. The guilty verdict did not, of course, carry with it any civil adjudication of liability to the victim bank in any specified amount. The only claim adverse to that of the defendant was the government's claim that as a short-cut to an obviously just solution it should be permitted to turn the money over to the victim bank and let defendant try to get it back from the bank.

While we wholeheartedly approve the proposition that victims of crime should have compensation from the criminal, we feel that even at the cost of judicial time it is preferable to accomplish this end through traditional judicial procedures rather than to leave it to the police, state or federal, to find nonjudicial ways and means by which to secure compensation from the criminal. Accordingly, we reject any claim of the United States to

1. Agent Scott's affidavit states that $98.00 in cash was seized from co-defendant Middleton at the time of arrest. The $1,437.00 total includes this amount.

2. Defendant's motion for return of seized funds does not seek the return of these two "bait" bills. (Paper 54).

possession of the money for such purpose."

*Id.* at 1064–1065. (Footnote Omitted). The case was remanded with instructions that the seized money was to be returned to the defendant unless other claims to the money had surfaced by the time the district court took action on the remand.[3]

This court agrees with the reasoning of the Ninth Circuit in *Palmer*. Unless it can be found that the seized money is the exact money taken from the victim bank or there is a third-party attachment or some procedure by which a third-party has made a claim against the fund, the Government has no right to retain possession of the seized money as against a properly asserted claim of the defendant.

In the present case, however, it appears that the Government no longer has possession or control of the seized money.[4] Defendant's motion seeks return of the money actually seized rather than damages for any alleged wrongdoing by the Government in turning the money over to the victim bank or in failing to return the money to defendant. Thus, the question arises whether it is a defense to the motion for return of seized money that the Government no longer has possession of the money.

In *United States v. Wilson*, 176 U.S.App. D.C. 321, 540 F.2d 1100 (1976), the Government argued that a post-conviction motion for return of seized funds should be denied because the money seized was in the District of Columbia's bank account.[5] Judge MacKinnon, for the court, characterized this argument as one of administrative inconvenience and entitled to no weight where the inconvenience appeared minor. Judge MacKinnon stated that "[w]hoever holds the money holds it subject to the order of the federal court and is subject to its judgment and the execution thereof". *Id.* 176 U.S.App.D.C. at 325, 540 F.2d at 1104. In *Wilson*, however, the Government had disclaimed the position that defendant was not entitled to the money and conceded at oral argument that the disposition of the money was a "decision almost by indecision". *Id.* Accordingly, this court does not view the *Wilson* decision as determinative on the Government's second contention in the present case.

On the contrary, this court has concluded that the Government's argument that it no longer has possession or control of the seized money is on the facts of this case a defense to the motion for return of said funds.

In *Mayo v. United States*, 425 F.Supp. 119 (E.D.Ill.1977) the court held that Rule 41(e), Fed.R.Crim.P., does not support a claim for money damages for illegally seized and destroyed property, the purpose of the Rule being to allow the return of property unlawfully seized. The court in *Mayo* held that an adequate remedy at law existed under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*[6] *Id.* at 122–123.

The holding in *Mayo*, while addressed to a claim under Rule 41(e), is applicable as well to motions for return of seized property which, while not technically within the ambit of Rule 41(e), fall within the

---

3. Following remand the district court again denied the defendant's motion for return, this time on the basis of the Government's claim that since the defendant had not listed the money in his affidavit seeking counsel at Government expense, the Government was entitled to assert an equitable lien on the fund to secure partial payment for the cost of his defense. The Ninth Circuit affirmed the district court's denial of the motion for return of seized property on this basis. *U.S. v. Palmer*, 588 F.2d 732 (9th Cir. 1978).

4. The Government did not raise this contention in its original motion to dismiss for lack of jurisdiction.

5. According to the *Wilson* opinion the money had been deposited by the property clerk of the Metropolitan Police Department into the General Revenue fund of the District of Columbia. The money had been seized when the Metropolitan Police raided defendant's apartment pursuant to a U.S. Magistrate Search Warrant.

6. In *Mayo* the court also found that even if the suit were treated as a federal tort claim suit, the claim would be barred because not first presented to the federal agency as required by 28 U.S.C. § 2675.

ancillary jurisdiction of the court over the original criminal case. Thus, this court finds that its ancillary jurisdiction to decide post-conviction motions for return of seized property does not extend to claims for damages for seized property no longer in the possession of the Government.

It is unnecessary to decide at this point what, if any, civil remedies might be available to defendant. However, since this court's earlier opinion addressed the Government's contention that the defendant's claim was barred by the two year statute of limitations applicable to claims under the Federal Tort Claims Act, 28 U.S.C. § 2401(b), some further comment may be appropriate here. The Government's argument was rejected because the motion for return of the seized money was not an action in tort. This court need not decide at this time whether 28 U.S.C. § 2401(b) would be applicable to any subsequent civil action against the USA for wrongfully disposing of the seized funds.[7] Cf. Menkarell v. Bureau of Narcotics, 463 F.2d 88 (3rd Cir. 1972); Mayo v. United States, 425 F.Supp. 119 (E.D.Ill.1977); Carignan v. United States, 48 F.R.D. 323 (D.Mass.1969).

For the reasons set out herein, an order will be entered denying the motion of Totaro for the return of money seized from him.

---

**7.** The court notes that subsequent to filing his motion for return of the seized funds, defendant mailed to the court a paper entitled "Complaint for Return of Illegally Seized Funds". This paper, unaccompanied by either a filing fee or a motion to proceed *in forma pauperis*, and bearing reference to the instant criminal case number, was filed in this criminal case rather than being treated as a civil case. *See* Paper 57. In any event, the "complaint" seems to seek return of the funds seized rather than damages.