Salvatore Ignatius TOTARO

v.

James N. LYONS, Vice President, Bank of Maryland; Russell T. Baker, Jr., United States Attorney; Donald L. Scott, Special Agent (FBI); George Cronin, Special Agent (FBI); Joseph M. McElhenny, Special Agent (FBI); Federal Bureau of Investigation.

Civ. A. No. M–79–2017.

United States District Court, D. Maryland.

Sept. 19, 1980.

<br>

Salvatore Ignatius Totaro, pro se.

Robert H. Rosenbaum, of Riverdale, Md., for defendant James N. Lyons.

Michael J. Travieso, Asst. U. S. Atty. of Baltimore, Md., for defendants Russell T. Baker, Jr., U. S. Atty., Baltimore, Md., Scott, Cronin, McElhenny, and Federal Bureau of Investigation.

### MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

Plaintiff who has been convicted of extortionate extensions of credit, collection of credit by extortionate means, and bank robbery, and who is presently an inmate at the United States Penitentiary at Leavenworth, Kansas, filed this action *in forma pauperis.* He is seeking the return of property and cash allegedly seized from his person and residence pursuant to a valid search for the fruits of the crimes for which plaintiff was convicted. His complaint requests declaratory relief, the return of seized property valued at approximately $2,000 [1], and cash amounting to $2,397 as well as punitive and compensatory damages of $7,500 attorneys fees, and costs of litigation.

---

1. The record is unclear about the exact nature of the personal property items valued at $2,000 for which the plaintiff seeks recovery. In order for the court to consider this claim, the plaintiff must amend his complaint to allege with proper specificity the items involved.

Plaintiff alleges jurisdiction under 28 U.S.C. §§ 2201 and 2202 (declaratory relief); under 28 U.S.C. § 1331 (deprivation of constitutional rights); under 28 U.S.C. § 1361 (mandamus to compel an officer of the United States Government to perform a duty); and under 28 U.S.C. § 1343 (redress for deprivation of constitutional rights for any act done in furtherance of a conspiracy as mentioned in 42 U.S.C. § 1985). The defendants are the United States Attorney for Maryland, one former special agent for the Federal Bureau of Investigation, two special agents of the FBI, and the Vice President of the Bank of Maryland, Hillcrest Heights, Maryland.[2] "Defendant" FBI [3] and defendant Lyons seek to dismiss plaintiff's complaint on various grounds alleging lack of jurisdiction, failure to state a cause of action, immunity from suit, lack of a showing of conspiracy on the part of defendants, and a statute of limitations bar.

## I. Statement of Facts

Plaintiff Totaro was arrested on February 27, 1975, by agents of the Federal Bureau of Investigation upon a complaint charging him with making extortionate extensions of credit in violation of 18 U.S.C. § 892 and collection of extensions of credit by extortionate means in violation of 18 U.S.C. § 894. On March 4, 1975, Totaro was indicted on the credit charges. On the same day he was separately indicted for violation of 18 U.S.C. § 2113, bank robbery. Plaintiff was tried, found guilty and sentenced in both cases. Two twenty dollar bills from a white envelope taken from plaintiff's person during a search had serial numbers corresponding with two of the "bait bills" taken during the bank robbery and were introduced into evidence at the bank robbery trial. In the instant case, it is unclear whether plaintiff includes those bills in his recovery claim.[4] Plaintiff, as

defendant in the criminal cases, filed timely motions to suppress the evidence seized in the search of his person and residence. Both motions were denied. Those motions did not request the return of any property seized.

Plaintiff is presently serving five year concurrent sentences for the extortionate credit crimes and is under a twenty year consecutive sentence for conviction of bank robbery. Plaintiff appealed the convictions in both cases. The convictions were affirmed on appeal on September 7, 1977, (credit), and on February 7, 1977 (bank robbery). The Supreme Court denied certiorari in the bank robbery case on May 6, 1977.

Plaintiff next filed a *pro se* "Motion for the Return of Illegally Seized Funds" pursuant to Rule 41(e) of the Fed.R.Crim.P. and a "Motion for Summary or Default Judgment" on his claim for return of the funds. The government filed a response seeking dismissal of the motions for lack of subject matter jurisdiction. The court, *United States v. Totaro*, 468 F.Supp. 1045 (D.Md.1979), held that jurisdiction existed over a post conviction motion for the return of seized property as being ancillary to its jurisdiction over the criminal case. The parties were directed to submit affidavits on the subject of the total amount of money seized from Totaro and the ownership or right to possession of such money.

On June 13, 1979, the court denied Totaro's motion on the merits, *United States v. Totaro*, 472 F.Supp. 726 (D.Md.1979), holding that the fact that the government was no longer in control or possession of the seized money was a defense to the motion for return of said funds. 472 F.Supp. at 729.

In the instant case, plaintiff asserts that at the time of his original arrest he had on

---

**2.** The bank may be located in Landover, Maryland. See Exhibit A.

**3.** Apparently, the defendants and the court clerk believe plaintiff to have named the FBI as a party to the suit. Upon a reading of the plaintiff's complaint, the court does not find this to be so. The court will overlook the fact

that the motion to dismiss was made by the F.B.I. and treat it as having been made by any one of the other parties being represented by the U. S. Attorney's office.

**4.** In plaintiff's prior actions before this court, he excepted those bills from his recovery claim.

his person cash in an amount in excess of $1,000, as well as a sealed envelope containing a sum of money which he later learned to be in the amount of $400. Upon a search of plaintiff, these monies were taken by the FBI agents. Plaintiff further asserts that $980.00 in cash and approximately $2,000 worth of personal property items were seized during the search of his residence. After stating that on August 8, 1978, Mr. Lyons, Vice President of the Bank of Maryland, "did accept from FBI agents the sum of $1437.00," plaintiff concludes the facts as related "disclose a concerted effort by defendants and their agents to deprive plaintiff of constitutionally secured rights." Complaint at 3.

Plaintiff argues, as his first cause of action, violation of his 5th Amendment due process rights, i. e., "taking from plaintiff property in the form of United States currency without due process of law." Plaintiff's complaint at 3. Secondly, plaintiff asserts that he was deprived of his personal property in violation of the Fifth Amendment "without due process of law in a conspiracy in violation of 42 U.S.C. § 1985(3)." Finally, plaintiff states that he has no adequate remedy at law and urges the court to grant him equitable and declaratory relief.

The affidavits submitted by plaintiff include statements by defendants Scott, Cronin, McElhenny and Lyons. These affidavits state that at the time of plaintiff's arrest, $59.00 in loose currency and $300.00 in a white envelope were seized from plaintiff Totaro and $980.00 cash was seized during the search of his residence. The affidavit of former FBI agent Scott asserts that after the appeals from the robbery conviction were concluded, and after obtaining authorization from an Assistant United States Attorney, Scott turned over to Lyons, the vice president of the bank which had been robbed, all of the funds seized from Totaro, from his co–defendant,[5] and from the searched residence. Scott's affidavit states that the total amount he turned over to the bank was $1437.00.

The government's motion to dismiss asserts that the court lacks jurisdiction over the FBI as an entity,[6] that the complaint fails to state a claim upon which relief can be granted, that the court lacks jurisdiction over the subject matter, and that the complaint is barred by the statute of limitations applicable to the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680.

In his motion to dismiss, Lyons states that the complaint fails to state a cause of action under 42 U.S.C. § 1985(3) since plaintiff did not allege class based discriminatory *animus* on the part of defendants, or any conspiracy to deprive plaintiff of equal protection rights. Lyons asserts that plaintiff's suit is barred by the statute of limitations on torts. Further the defendant argues that "if [plaintiff] was injured at all [he] was injured when the property was taken and retained by the defendants other than defendant Lyons." Defendant Lyons states that plaintiff's "injury was complete" before Agent Scott turned over the funds to Lyons. Lyons asserts that the Bank's acceptance does not "impute knowledge to Lyons or the Bank of Maryland" nor " does it suffice to make Lyons a member of the conspiracy."

## II. Jurisdiction

■ Plaintiff's allegation of jurisdiction under 28 U.S.C. § 2201 and 28 U.S.C. § 2202 has no basis as those sections do not themselves create jurisdiction but merely add an additional remedy where the district court has jurisdiction to entertain a suit. *Delavigne v. Delavigne*, 530 F.2d 598 (4th Cir. 1976).

■ Section 1361 of Title 28 U.S.C. cannot be a jurisdictional basis for this case since the defendant United States Attorney and FBI agents are no longer in possession

---

5. Agent Scott's affidavit states that $98.00 in cash was seized from plaintiff's co–defendant Middleton, at the time of arrest. The $1,437.00 total includes this amount.

6. Since the FBI is not a party, this will be treated as the raising of the immunity defense for the other governmental defendants.

of the money taken from plaintiff's person and residence. *See, United States v. Totaro,* 472 F.Supp. at 729.

■ Under 28 U.S.C. § 1343, jurisdiction is not created unless the complaint at a minimum seeks recovery under one of the substantive statutes to which the jurisdictional statute relates. *Nouse v. Nouse,* 450 F.Supp. 97 (D.Md.1978). Although the plaintiff alleges a conspiracy under 42 U.S.C. § 1985(3), the scope of § 1985(3) actions was defined in *Griffin v. Breckingridge,* 403 U.S. 88, 102–3, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971):

"To come within the legislation a complaint must allege that the defendants did (1) "conspire ...," (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." It must then assert that one or more of the conspirators (3) did or caused to be done, "any act or furtherance of the object of [the] conspiracy," whereby another was (4a) "injured in his person or property," or (4b) "deprived of having and exercising any right or privilege of a citizen of the United States."

Since plaintiff has not alleged, nor is there present in the facts, any equal protection violation, § 1985(3) is not a basis on which plaintiff can assert his claims.

■ The question which remains is whether the court has general federal question jurisdiction, pursuant to 28 U.S.C. § 1331, of a cause of action alleged directly under the Due Process Clause of the Fifth Amendment. The Supreme Court recently addressed this issue in *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), holding that a direct cause of action

may be implied under the Due Process Clause. *Id.* at 243–44, 99 S.Ct. at 2275–2276. This decision expands the doctrine previously set forth by the court in *Bivens v. Six Unknown Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), wherein the court held that a citizen suffering a compensable injury under the Fourth Amendment can invoke the general federal question jurisdiction to obtain an award of damages against the responsible federal official. Both *Bivens* and *Davis* are further reinforced by the court's recent decision in *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), in which the court stated:

"*Bivens* established the victims of a constitutional violation by a federal agent have a right to recover damages against the officials in federal court despite the absence of any statute conferring such a right."

■ Under these decisions, therefore, the plaintiff in this action has properly alleged a federal cause of action against those defendants alleged to have deprived him of property without due process of law, i. e., the prosecutor and FBI agents who turned the cash seized over to the bank[7]. No federal cause of action is stated against defendant Lyon under this rationale.[8]

### III. The Deprivation of Constitutional Rights Claim

#### A. Prosecutorial Immunity

■ The motion to dismiss as to defendant Baker, the United States Attorney for the District of Maryland, is granted. Baker did not prosecute the cases against Totaro. Since Mr. Baker did not prosecute and has not been shown to have had any

---

**7.** Under 28 U.S.C. § 1331, there exists a $10,000 jurisdictional amount in controversy requirement. The value of the property sought by the plaintiff, in and of itself, does not reach that amount. Under the Court's rationale in *Bivens,* however, damages beyond mere compensation are recoverable against federal officials to redress a violation of constitutional rights. The court, therefore, cannot say with certainty that the value of the claim being asserted in this

action does not meet the jurisdictional requirement.

**8.** The only conceivable argument to be made for alleging jurisdiction over Lyon under the plaintiff's Fifth Amendment claim is that Lyon conspired with the federal agents to violate the plaintiff's Due Process rights. Such a claim, however, is too attenuated to warrant an extension of jurisdiction in this case.

other involvement in the decision relative to the disposition of the disputed money in the instant case, he must be dismissed as a party defendant. The doctrine of *respondeat superior* does not apply in situations involving state officials. *See Barrow v. Bounds*, 498 F.2d 1397 (4th Cir. 1974), *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Bolden v. Mandel*, 385 F.Supp. 761, 762 (D.Md.1974). The court sees no reason why the same rule should not be applied in the instant case involving federal officials.

■ Mr. Donald Feige was not named as a party defendant. Nonetheless, he was the Assistant United States Attorney who apparently authorized defendant Scott to turn over the monies to defendant Lyons. While the disposal of property seized in connection with a criminal prosecution is within the discretion and scope of authority of a federal prosecutor, *see Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the disposal of property to a third party, absent any valid reason other than "short cut justice", *U.S. v. Palmer*, 565 F.2d 1063, 1064–65 (9th Cir. 1977), is an action by an Assistant United States Attorney which may go beyond the scope of his authority. The court has held that the government had no right to return possession of the seized money as against a properly asserted claim of the criminal defendant if that claim were also proven to be legitimate. *United States v. Totaro*, 472 F.Supp. 726, 729 (D.Md.1979). If the government had no right to retain possession of the seized funds absent identification of the money as the bank's funds or some form of third party attachment, it might be equally improper for the government to dispose of the funds in the manner in which it did.

### B.  Other Immunities

■ A qualified immunity from liability is the general rule for executive officials charged with constitutional violations.

"It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct." *Butz v. Economou*, 438 U.S. 478, 498, 98 S.Ct. 2894, 2906, 57 L.Ed.2d 895 (1978) *citing Scheuer v. Rhodes*, 416 U.S. 232, 247–48, 94 S.Ct. 1683, 1691–92, 40 L.Ed.2d 90 (1974).

■ The motion to dismiss is granted as to defendants Cronin and McElhenney. Plaintiff has failed to assert any claims which would render defendants Cronin and McElheney liable for damages in the face of their qualified immunity.

Thus, it would appear that the only government officials properly party defendants are any prosecutors who authorized the turning over of the $1,437, $1,339 [9] of which Totaro may claim, and defendant Scott who consummated the transaction. *See* Exhibit A, p. 3; Exhibit C. Whether or not they would be entitled to a qualified immunity cannot be decided on the basis of the present record.

### IV. · The Replevin Claim:

■ An action for replevin, *i. e.* one to recover property wrongfully appropriated, sounds in tort. *Cline v. Foundation Rock Lime and Brick Co.*, 217 Md. 425, 143 A.2d 496 (1958). While plaintiff Totaro's replevin claim might conceivably state a cause of action under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680, in other circumstances, in the instant case the court lacks jurisdiction to hear the claim. The plaintiff failed to satisfy the procedural prerequisite of filing a tort claim with the appropriate federal agency. 28 U.S.C. § 2675(a); *Fayerweather v. Bell*, 447 F.Supp. 913 (M.D.Pa.1978). In addition, 28 U.S.C. § 2401 requires a tort claim against the United States to be presented to the applicable federal agency within two years after such a claim accrues. The plaintiff's failure to exhaust administrative remedies

---

**9.** The court assumes this figure does not include the two "bait" bills. The court will not allow Totaro to recover the $98.00 taken from his co–defendant Middleton.

along with plaintiff's failure to commence the tort claim against the United States within the applicable statute of limitations bars his claim against those defendants acting within the scope of other authority. 28 U.S.C. § 1346(b).

The plaintiff's *pro se* complaint arguably alleges a state law cause of action for replevin against defendant Lyons and his employer, the Bank of Maryland. This raises the question of whether this court has pendent party jurisdiction[10] to hear such a claim. The extent to which the doctrine of pendent party jurisdiction may be expanded was addressed by the Supreme Court in *Aldinger v. Howard*, 427 U.S. 1, 14–15, 96 S.Ct. 2413, 2420, 49 L.Ed.2d 276 (1976) wherein the court analyzed the issue as follows:

"The situation with respect to the joining of a new party, . . . strikes us as being both factually and legally different from the situation facing the court in [*United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)] and its predecessors. From a purely factual point of view, it is one thing to authorize two parties, already in federal court by virtue of a case over which the court has jurisdiction, to litigate in addition to their federal claim a state–law claim over which there is no independent basis of federal jurisdiction. But it is quite another a thing to permit a plaintiff, who has asserted a claim against one defendant with respect to which there is federal jurisdiction, to join an entirely different defendant on the basis of a state–law claim over which there is no independent basis of federal jurisdiction, simply because his claim against the first defendant and his claim against the second defendant 'derive from a common nucleus of operative fact.'

.    .    .    .    .

There is also a significant legal difference. In [*Osborn v. Bank of the United States*, 9 Wheat. 738, 6 L.Ed. 204 (1824)] and *Gibbs* Congress was silent on the extent to which the defendant, already properly in federal court under a statute, might be called upon to answer nonfederal questions or claims; the way was thus left open for the court to fashion its own rules under the general language of Art. III. But the extension of *Gibbs* to this kind of 'pendent party' jurisdiction—bringing in an additional defendant at the behest of the plaintiff—presents rather different statutory jurisdictional considerations."

In *Aldinger*, the court resolved these issues by looking to the statute governing the underlying federal claim and determining whether Congress intended to exclude the "pendent parties" from coverage under that statute.[11]

■ Applying this analysis to the present cause of action, the court finds that the plaintiff may not properly assert a pendent party claim against defendant Lyons or his employer. The underlying federal claim is based upon case law, as set out in *Bivens* and subsequent cases, which recognize federal jurisdiction to redress claims of violations of constitutional rights by federal officials. The holdings of those cases have been narrowly limited to cases involving acts of federal officials. Similar claims brought against state officials would be governed by 42 U.S.C. § 1983, which explicitly limits its coverage to actions taken under color of state law. Thus both *Bivens* and § 1983 do not reach actions taken by private citizens. Given this, the action alleged against defendant Lyons and his employer is not properly within the pendent

10. The question is one of pendent party jurisdiction since it involves a state law claim, purportedly arising out of the same nucleus of operative facts supporting the federal question claim, alleged against individuals who are not party to the federal question claim.

11. *Aldinger* involved an action under 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983. In that case

the court dismissed the pendent party claim asserted against a defendant county upon a finding that counties were exempted from coverage under § 1983 by Congressional intent. The substantive holding of this decision would be altered by the court's later holding regarding municipal liability in *Monell*. However the analytical methodology remains valid.

party jurisdiction of this court and must therefore be dismissed.

### V. Conclusion:

Accordingly it is ORDERED this 19th day of September, 1980, by the United States District Court for the District of Maryland as follows:

(1) Defendants' Motion to Dismiss is Granted as to defendants Lyons, Bank of Maryland, Baker, Cronin and McElhenny;

(2) Defendants' Motion to Dismiss is Denied as to defendant Scott;

(3) Plaintiff is granted leave to amend within thirty days to add other proper parties, in accordance with this opinion, if he so desires;

(4) The clerk shall mail a copy of this Memorandum and Order to the parties.