**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James Leroy MARTINSON, Defendant-Appellant.**

**No. 85–3066.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 6, 1986.

Decided Feb. 3, 1987.

As Amended on Denial of Rehearing Feb. 27, 1987.

Federal Public Defender, Portland, Or., for defendant-appellant.

Thomas M. Coffin, Asst. U.S. Atty., Eugene, Or., for plaintiff-appellee.

Before FLETCHER, ALARCON and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

This case involves conduct by the government that we believe justifies our criticism. Accordingly, we report the relevant facts in considerable detail.

James Leroy Martinson is apparently a gunsmith and a gun collector. In January, 1984, he and a friend were driving from Springfield, Oregon, to attend a gun show in Grants Pass, Oregon. The truck in which they were driving was pulling a trailer. Martinson, who was driving, stopped the truck in an off-street parking lot in front of a supermarket. A local police officer believed the truck was partially blocking traffic and stopped to warn Martinson. During the course of this routine inquiry, the officer requested by radio that his headquarters "run a warrant check" on James Leroy Martinson.[1] The officer was informed that the police computer revealed an outstanding warrant for a federal offense. Relying upon this information, the officer placed Martinson under arrest and removed him to the local jail. His companion apparently drove the truck and trailer to the jail. Martinson told the police officers that guns of his were in the trailer. The police searched the trailer, with the consent of Martinson's companion, who was its owner. Nine 19th century black powder Winchester rifles were seized and were thereafter turned over to an agent of the Bureau of Alcohol, Tobacco & Firearms (ATF).

Martinson remained in jail only briefly. It was soon determined that the warrant under which he had been arrested had been

---

Hollis K. McMilan, Chief Deputy Federal Public Defender, Stephen R. Sady, Asst.

1. We are informed that a warrant check is a routine police procedure that matches a name electronically against names of persons who have warrants outstanding against them.

recalled several weeks before when a 1977 federal firearms indictment had been dismissed at the request of the government. Apparently the record of that dismissal had not been entered in district court records at the time of Martinson's arrest. Martinson was promptly released. But the ATF did not return the guns.

While Martinson was in custody a public defender was appointed to represent him. After his release from jail, the public defender filed a motion on his behalf in federal court under Rule 41(e), Fed.R.Crim.P., seeking a court order for return of the guns. The motion was docketed under the criminal case number assigned to the dismissed federal firearms indictment.

A hearing was held on the motion before a magistrate. Martinson testified that he owned the guns and rested. The government sought to cross-examine him as to where and under what circumstances he had brought the guns into the country from Canada where he had been residing, arguing that Martinson was suspected of having smuggled them across the international border. When Martinson invoked the Fifth Amendment, his testimony as to his ownership of the guns was stricken as a sanction for interfering with the government's cross-examination. The district court accepted the magistrate's recommendation and denied return of the guns.

Martinson promptly filed a motion for reconsideration. The government did not respond to the motion for nearly a year, at which time it continued to resist any return of the guns. The district court ultimately denied the motion for reconsideration in May 1985. Martinson appealed that denial to this court.

During the year following the hearing before the magistrate and the notice of appeal to this court, the government brought no charges against Martinson but the ATF continued to retain the guns. In its briefing of this appeal the government strenuously resisted their return, persisting in its speculation that they had been smuggled from Canada. However, at oral argument, in response to our inquiry, the government admitted that the ATF had long since abandoned its investigation of Martinson and the U.S. Attorney was not seeking any new indictment.

After oral argument, the government advised the court that the ATF has destroyed the guns pending this appeal. The destruction of the guns had not been mentioned theretofore. Accordingly, we ordered the government to explain its conduct, and suggested to Martinson that he respond to the issue of mootness.

We were thereupon belatedly informed that administrative forfeiture proceedings had been commenced during the time Martinson's motion for reconsideration was pending before the district court and that the guns had been destroyed pursuant to those proceedings. In response, Martinson's counsel informed us that he had requested in writing that the forfeiture proceedings be suspended pending a ruling on the motion for reconsideration and that the ATF had agreed to such a suspension. Nevertheless, we were informed that without further notice to Martinson or his counsel, the guns were destroyed by the ATF six months prior to oral argument, while the appeal was pending in this court. The Assistant U.S. Attorney disclaimed any responsibility because, he alleged, the ATF was acting in a totally independent administrative proceeding, and he had no knowledge of the communications between Martinson's counsel and the ATF or of the destruction of the guns prior to oral argument.

This appeal began as a relatively straightforward case involving the return of property. It has now taken on new significance that raises other important questions concerning the conduct of the government. We do not undertake to resolve every question now because the record is not sufficiently clear for us to do so. A remand will be necessary. We do, however, address those matters clearly before us.

## I. JURISDICTION AND MOOTNESS

■ A district court has jurisdiction to entertain motions to return property seized

by the government when there are no criminal proceedings pending against the movant. *See, e.g., Richey v. Smith,* 515 F.2d 1239, 1243 (5th Cir.1975); *Application of J.W. Schonfeld, Ltd.,* 460 F.Supp. 332, 334–35 & n. 2 (E.D.Va.1978); *see generally DiBella v. United States,* 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962) (discussing appealability of rulings on such motions). Such motions are treated as civil equitable proceedings even if styled as being pursuant to Fed.R.Crim.P. 41(e). *Goodman v. United States,* 369 F.2d 166, 168 (9th Cir. 1966); *Mr. Lucky Messenger Service, Inc. v. United States,* 587 F.2d 15, 16–17 (7th Cir.1978); *Richey,* 515 F.2d at 1245; *United States v. Mid-States Exchange,* 620 F.Supp. 358, 359 (D.S.D.1985); *see Weldon v. United States,* 196 F.2d 874, 875 (9th Cir.1952) (Rule 41 motions filed before pendency of criminal case are essentially civil actions to recover personal property); *see also Meier v. Keller,* 521 F.2d 548, 554 (9th Cir.1975) (district court has jurisdiction over independent, pre-indictment suits in equity seeking return of illegally obtained evidence), *cert. denied,* 424 U.S. 943, 96 S.Ct. 1410, 47 L.Ed.2d 348 (1976). In ruling on the motion, the court must take into account all equitable considerations. *Meier,* 521 F.2d at 554; *VonderAhe v. Howland,* 508 F.2d 364, 371 (9th Cir.1975); *see also Robinson v. United States,* 734 F.2d 735, 738 (11th Cir.1984); *Angel-Torres v. United States,* 712 F.2d 717, 719–20 (1st Cir.1983); *Marshall v. Central Mine Equipment Co.,* 608 F.2d 719, 721 (8th Cir.1979); *Mr. Lucky Messenger Service,* 587 F.2d at 17; *Hunsucker v. Phinney,* 497 F.2d 29, 34 (5th Cir.1974), *cert. denied,* 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975).

It is thus apparent that we have jurisdiction that has been timely asserted to order a return of Martinson's property. But the government has destroyed the property pending this appeal. We next consider whether it may also have destroyed our jurisdiction in doing so.

■ This court has jurisdiction over an appeal from a denial of a motion seeking only the return of property if there are no criminal proceedings pending against the movant. *DiBella,* 369 U.S. at 131–32, 82 S.Ct. at 660; *United States v. Storage Spaces Designated Nos. 8 & 49,* 777 F.2d 1363, 1365 (9th Cir.1985); *Meier,* 521 F.2d at 556; *see DeMassa v. Nunez,* 747 F.2d 1283, 1286 (9th Cir.1984). "Denial of review in such circumstances would mean that the Government might indefinitely retain the property without an opportunity for the movant to assert on appeal his right to possession." *United States v. Ryan,* 402 U.S. 530, 533, 91 S.Ct. 1580, 1582, 29 L.Ed.2d 85 (1971). Because no criminal proceeding is pending against Martinson, we have jurisdiction to hear this appeal.

■ The government claims the appeal is untimely. Because the motion was styled as one under Rule 41(e) and because the case has a criminal docket number, it asserts that this is a criminal matter and the motion for reconsideration did not stay the time for appeal. *See* Fed.R.App.P. 4(b). As the government concedes elsewhere in its brief, this is a civil case. The Federal Rules of Civil Procedure apply at least to the extent that Martinson's motion for reconsideration can be treated as being taken pursuant to Rule 52(b). *See Goodman,* 369 F.2d at 169 (applying Federal Rules of Civil Procedure); *Application of J.W. Schonfeld,* 460 F.Supp. at 334 (same). Thus the appeal is timely. *See* Fed.R.App.P. 4(a)(4)(ii).

■ "It is the historic purpose of equity to secure complete justice. The courts will be alert to adjust their remedies so as to grant the necessary relief." *EEOC v. General Telephone Co.,* 599 F.2d 322, 334 (9th Cir.1979), *aff'd* 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980); *see also Schaefer v. Gunzburg,* 246 F.2d 11, 16 n. 2 (9th Cir. 1957) (equity court should give final relief demanded by circumstances of the case) (quoting *Tayloe v. Merchants' Fire Ins. Co.,* 9 How. 390, 405, 50 U.S. 390, 405, 13 L.Ed. 187 (1850)), *cert. denied,* 355 U.S. 831, 78 S.Ct. 45, 2 L.Ed.2d 43 (1957). Where a court of equity assumes jurisdiction because the complaint requires eq-

uitable relief, the court has power to award damages incident to the complaint. *Schaefer v. Gunzburg*, 246 F.2d 11. *See also Albermarle Paper Co. v. Moody*, 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975); *Parks v. Pavkovic*, 753 F.2d 1397, 1408 (7th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 3529, 87 L.Ed.2d 653 (1985); *Goldberg v. Medtronic, Inc.*, 686 F.2d 1219, 1229 (7th Cir.1982). So long as the court may order relief responsive to the wrong alleged, the appeal is not moot.

We recognize that there are cases holding that damages are unavailable in a proceeding based on a motion for return of property. *See United States v. Proca*, 535 F.Supp. 1343, 1345 (N.D.Cal.1982); *United States v. Totaro*, 472 F.Supp. 726, 730 (D.Md.1979); *United States v. Thrush*, 79 F.R.D. 234, 235 n. 1 (M.D.Penn.1978); *see also Shaw v. United States*, 8 Cl.Ct. 796, 798 (1985). These cases rely on *Mayo v. United States*, 425 F.Supp. 119 (E.D.Ill. 1977). In *Mayo*, the court refused to allow a damage claim based on Rule 41(e) because the rule does not provide explicitly for such a remedy and because an adequate remedy at law, an independent civil action, is available.[2] *Id.* at 122–123.

 We find these reasons unpersuasive in light of the equitable powers of the court. When a citizen has invoked the jurisdiction of a court by moving for return of his property, we do not think that the government should be able to destroy jurisdiction by its own conduct. The government should not at one stroke be able to deprive the citizen of a remedy and render powerless the court that could grant the remedy. Our decision in *United States v. Palmer*, 565 F.2d 1063 (9th Cir.1977), is instructive. In *Palmer*, after the defendant was convicted of bank robbery, the government attempted to retain money seized prior to trial apparently to return it to the bank. We held that it could not.

While we wholeheartedly approve the proposition that victims of crime should have compensation from the criminal, we feel that even at the cost of judicial time it is preferable to accomplish this end through traditional judicial procedures rather than to leave it to the police, state or federal, to find nonjudicial ways and means by which to secure compensation from the criminal. Accordingly, we reject any claim of the United States to possession of the money for such purpose.

*Id.* at 1064–65. If we were to allow the government to moot a motion for return of property by giving the property away or destroying it, we would be encouraging precisely the sort of unilateral nonjudicial conduct condemned in *Palmer*.

The remedy proposed by the *Mayo* court and by the government, a separate civil action, is inadequate in light of the time and expense involved, particularly where the court considering the motion already has jurisdiction over the matter. *Cf. United States v. Wilson*, 540 F.2d 1100, 1104 (D.C.Cir.1976) (existence of civil remedies does not eliminate the court's duty and jurisdiction to return property after the government's need for it ends). Once a court of equity has asserted jurisdiction over a motion to return property, it maintains its jurisdiction as long as necessary to provide an adequate remedy to the movant.[3] *See United States v. Frank*, 763 F.2d 551, 553 (3d Cir.1985) (IRS converting contested check to cash does not remove jurisdiction over proceeds); *United States v. Francis*, 646 F.2d 251, 262–63 (6th Cir. 1981) (motion for return of money not mooted by government's giving it to State

---

**2.** *Mayo* also noted that the government had not consented explicitly to be sued and that the equitable jurisdiction of the court was not based on express congressional authorization. 425 F.Supp. at 122. However, these concerns exist regardless of whether or not damages are sought.

**3.** We note that this is not a case in which the property in question was forfeited pursuant to statute after adequate notice to the movant. Nor is it a case in which the government has turned the property over to state officials for use as evidence in a state proceeding. *See United States v. White*, 718 F.2d 260, 261 (8th Cir. 1983) (per curiam); *United States v. Prevatt*, 414 F.2d 239, 240–41 (5th Cir.1969) (per curiam).

of Michigan; question of whether it did so lawfully · remains); *United States v. Wright,* 610 F.2d 930, 938 (D.C.Cir.1979) (irrelevant that money which was subject of motion not in possession of government); *Wilson,* 540 F.2d at 1104 (same).

We hold that this court has jurisdiction to decide this case, and that our jurisdiction has not been mooted by the actions of the government in destroying the property sought to be returned.

## II. MERITS

As there must be a remand to permit Martinson to amend his pleadings, preliminary to further district court consideration of his rights in this matter we wish to clarify certain matters raised on this appeal.

### 1. *Burden of Proof.*

When a motion for return of property is made before an indictment is filed (but a criminal investigation is pending), the movant bears the burden of proving both that the seizure was illegal and that he or she is entitled to lawful possession of the property. 3 C. Wright, *Federal Practice & Procedure, Criminal 2d* § 673 at 753–54; *Watts v. Kroczynski,* 636 F.Supp. 792, 796 (W.D.La.1986); *United States v. $20,-294.00,* 495 F.Supp. 147, 150 (E.D.N.Y. 1980); *see Francis,* 646 F.2d at 262. In this case the district court found that the seizure was legal and that Martinson had not met his burden of proving lawful possession.

[8] However, when the property in question is no longer needed for evidentiary purposes, either because trial is complete, the defendant has pleaded guilty, or, as here, the government has abandoned its investigation, the burden of proof changes. The person from whom the property is seized [4] is presumed to have a right to its return, and the government has the burden of demonstrating that it has a legitimate reason to retain the property.[5] *Wright,* 610 F.2d at 939–40; *Ferris v. United States,* 511 F.Supp. 795, 796 (D.Nev.1981); *see Palmer,* 565 F.2d at 1065; *see also Mr. Lucky Messenger Service,* 587 F.2d at 17 (where government has held property for 18 months without filing criminal charges, equity mandates return of property unless government can justify its actions). In such a case, the legality of the search and seizure is no longer an issue; even if the seizure was lawful the government must justify its continued possession of the property by demonstrating that it is contraband or subject to forfeiture. *See Frank,* 763 F.2d at 552–53; *Sovereign News Co. v. United States,* 690 F.2d 569, 577 (6th Cir. 1982), *cert. denied,* 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983); *United States v. Smith,* 659 F.2d 97, 99 (8th Cir.1981); *United States v. Farrell,* 606 F.2d 1341, 1347 (D.C.Cir.1979); *United States v. Premises Known as 608 Taylor Ave.,* 584 F.2d 1297, 1302 (3d Cir.1978); *but see United States v. Sweeney,* 688 F.2d 1131, 1146

---

**4.** Technically, Martinson was not the person from whom the guns were seized. However, we think that only a minimal showing such as testimony from the owner of the truck, now will be required to shift the burden to the government. *See Mr. Lucky Messenger Service,* 587 F.2d at 18 (if movant proves seizure, lack of return, and lapse of time, government must then go forward with an attempt to justify its conduct). Martinson may not even have to take the stand. *See Ferris v. United States,* 501 F.Supp. 98, 100–01 (D.Nev.1980). The key point is that because the government no longer has an evidentiary need for the guns, Martinson no longer bears the burden of demonstrating that he is entitled to lawful possession.

**5.** Some courts have indicated that the burden also shifts if the government has held property

for an over-long period of time and does not begin a prosecution. *Mr. Lucky Messenger Service,* 587 F.2d at 17 (eighteen months); *Application of J.W. Schonfeld,* 460 F.Supp. at 337 (five months); *see United States v. Premises Known as 608 Taylor Avenue,* 584 F.2d 1297, 1302–03 (3d Cir.1978) (seven month delay acceptable where gambling investigations often take two years); *see also Robinson,* 734 F.2d at 738 (11th Cir.1984) (unreasonably long retention without instituting forfeiture proceedings can constitute due process violation); *cf. Offices of Lakeside Non-Ferrous Metals, Inc. v. United States,* 679 F.2d 778, 780 (9th Cir.1982) (rights of owner become more critical the longer the government retains property).

(7th Cir.1982) (Rule 41 motion unavailable even after trial if seizure lawful). A district court has both the jurisdiction and the duty to return the contested property "once the government's need for it has ended." *Wilson*, 540 F.2d at 1103–04; *$20,294.00*, 495 F.Supp. at 151; *United States v. Totaro*, 468 F.Supp. 1045, 1048 (D.Md.1979); *see also Palmer*, 565 F.2d at 1064 (relying on *Wilson* to assert jurisdiction over post-conviction motion to return property).[6]

■ Because the district court, acting on the government's assurances that an investigation was pending, placed the burden of proof on Martinson, we must remand for reconsideration of the motion under the applicable standards. Martinson should be allowed to amend his motion to request damages if he so desires. The government, of course, can present evidence to demonstrate that the guns were contraband and that Martinson is not entitled to damages. *See Wright*, 610 F.2d at 942; *Palmer*, 565 F.2d at 1065.

## 2. *Representation by Public Defender.*

■ In what we can only view as a questionable sense of priorities, the government argued strenuously that Martinson should not be eligible for representation by the public defender because, after the 1977 indictment was dismissed, his motion for return of the guns was properly a civil, and not a criminal, matter. As we are remanding the case, we will respond to this contention.

Martinson was arrested and incarcerated under a federal arrest warrant pursuant to the 1977 criminal indictment. The guns were seized on the basis of that indictment and arrest. The government asserted that a new federal indictment would be forthcoming and it persisted in this assertion for at least another year. As discussed above, we hold that his motion for return of the guns was properly an equitable matter.

However, on this record it is irrelevant whether Martinson's motion for return of the property was technically filed as a criminal or a civil matter. The public defender, once validly appointed, was clearly justified in continuing his representation of Martinson. The motion was sufficiently related to the 1977 criminal case as to be considered an "ancillary" proceeding for purposes of 18 U.S.C. § 3006A(c).

## 3. *The Actions of Federal Attorney.*

It appears that the guns were destroyed by the government while an appeal for their return was pending in our court. It further appears that counsel for ATF and counsel for Martinson had agreed that no such action would be taken. And finally, it appears that the United States Attorney denies any responsibility for these events.

It is not for this court to determine the facts concerning this bizarre proceeding and we shall not undertake to do so. However, on remand the district court may wish to determine what responsibility, if any, government counsel and Martinson's counsel, or either of them had to ascertain the facts concerning the status of the guns and to monitor the forfeiture proceedings pending the district courts ruling on the motion for reconsideration and the appeal to this court. All that is clear to us at the present time is that this case has been delayed and that the rights of Mr. Martinson have been adversely affected. Someone is responsible.

## III. DISPOSITION

We remand this case to the district court for further proceedings consistent with this opinion. The district court shall determine whether Martinson wishes to amend his motion and, if so, he shall be permitted to do so, and the district court shall conduct appropriate hearings thereon. *See generally Spomer, State's Attorney v. Littleton*, 414 U.S. 514, 522–23, 94 S.Ct. 685, 689–90, 38 L.Ed.2d 694 (1974); *Mackey v. Mendoza-Martinez*, 362 U.S. 384, 387, 80 S.Ct. 785, 787, 4 L.Ed.2d 812 (1960).

---

**6.** Prior to *Palmer*, we had held, based on an earlier version of Rule 41, that the rule was not a basis to obtain return of property after criminal proceedings have ended. *Bartlett v. United*

*States*, 317 F.2d 71 (9th Cir.1963) (per curiam), *cert. denied*, 375 U.S. 847, 84 S.Ct. 102, 11 L.Ed.2d 75 (1963); *see Totaro*, 468 F.Supp at 1046–48.

The appellant shall recover his costs on appeal. Rule 39, Fed.R.App.P.; *see Usher v. Secretary of Health and Human Services,* 721 F.2d 854, 856 (1st Cir.1983). The appellant will submit a verified and itemized cost bill within 21 days of the date of the filing of this opinion, and the panel will fix the costs by separate order.

REVERSED AND REMANDED.