**UNITED STATES of America, Plaintiff,**

v.

**ONE (1) OFFSET ADDRESSOGRAPH MULTILITH PRINTING PRESS, MODEL 1250, SERIAL NUMBER 710809HRP378, Defendant.**

**Civ. A. No. 80–151 Erie.**

United States District Court, W. D. Pennsylvania.

Jan. 27, 1982.

John P. Garhart, Asst. U. S. Atty., Erie, Pa., for plaintiff.

Leon F. Akerly, defendant, pro se.

## OPINION

WEBER, Chief Judge.

This is an action for forfeiture of counterfeit paraphernalia brought by the government pursuant to 18 U.S.C. § 492 to retain custody of an offset printing press alleged to have been used in illegal counterfeiting. The evidence was heard by the court in a non-jury proceeding on November 11, 1981 and the parties thereafter submitted proposed findings of fact. The owner of the printing press represented the defendant.

Upon review of the evidence the court now makes the following findings of fact:

1. On or about August 2, 1978, based on information provided by a confidential informant, Special Agent Anthony F. Sabruno of the United States Secret Service, was introduced to Leon Frederick Akerly in an undercover capacity. In conversation with Agent Sabruno, Mr. Akerly stated to Sabruno that he desired to counterfeit approximately $20,000,000 in United States currency. These parties further discussed the steps necessary to accomplish this objective, including types of ink and paper needed for the operation and manner of distribution of the counterfeit bills. Agent Sabruno agreed to supply paper and a printer while Mr. Akerly said he would provide the printing press and his warehouse.

2. On or about August 2, 1978, Agent Sabruno again met with Mr. Akerly. Mr. Akerly brought to the meeting a black light and micrometer to test various paper samples that were in the possession of Agent Sabruno. At the meeting, Mr. Akerly again discussed the distribution of the counterfeit money, processes for treating the paper to make it appear old, and indicated an intention to do a "good job".

3. On or about August 15, 1978, Mr. Akerly again met with Agent Sabruno. At this meeting, Special Agent Tommy A. Lightsey, acting in an undercover capacity, was introduced to Mr. Akerly as the printer that would be involved in the counterfeit operation. In conversation with Agent Lightsey, Mr. Akerly discussed the type of offset printing press needed in the counterfeit operation and indicated that the press would be available in 3 to 4 weeks. Mr. Akerly further discussed the method of making negatives to be used in the manufacture of the plates, the number of plates necessary, the time for printing and the methods by which genuine red and blue fibers could be duplicated in counterfeit United States currency paper.

4. On September 20, 1978, Agent Sabruno met Mr. Akerly at his place of business, North American Compounding Inc., located at 4680 Iroquois Ave., Harborcreek Township, Erie County, and was shown around Mr. Akerly's warehouse. Mr. Akerly explained where in the warehouse the printing would be done.

5. On or about October 19, 1978, Agent Sabruno met with Mr. Akerly at the Holiday Inn at Meadville, Pa. Mr. Akerly indicated that the printing press had not yet

been delivered and asked Agent Sabruno whether he had any plates available, to which Agent Sabruno stated that he had two plates. Agent Sabruno indicated that counterfeit money sells for 20% of its value and Mr. Akerly stated that he wanted more than that.

6. On or about November 1, 1978, Agent Sabruno visited Mr. Akerly's warehouse and observed an Addressograph 1250 Multilith printing press, Serial No. 710809HRP378 being installed there. Agent Sabruno informed Mr. Akerly that arrangements had been made to produce negatives and plates in Pittsburgh, Pennsylvania. Although indicating a concern about the distance involved, Mr. Akerly agreed to participate.

7. On November 4, 1978, Agents Lightsey and Sabruno met Mr. Akerly at his place of business, at which time Mr. Akerly showed both agents the 1250 Addressograph Multilith printing press. In discussing the manufacture of negatives and plates, Agent Sabruno provided a $20 bill for a specimen and Mr. Akerly provided a $50 and a $100 bill.

8. On November 5, 1978, Mr. Akerly was met at 12:30 a. m. at the Holiday Inn in Warrendale, Pennsylvania. Mr. Akerly followed Agents Sabruno and Lightsey to Graphic Arts Technical Foundation located in the Oakland section of Pittsburgh, where negative and printing plates containing impressions of $20, $50 and $100 bills were produced, with Mr. Akerly participating in the process, which was completed at about 3:30 a. m.

9. On December 6, 1978, Agent Sabruno telephoned Mr. Akerly and was advised by him that arrangements would be made for Mr. Akerly to be shown by personnel from Addressograph Multigraph Corporation how to operate the press.

10. On December 12, 1978, Agent Sabruno telephoned Mr. Akerly and was advised that Mr. Akerly was in possession of most of the necessary materials, that Mr. Akerly was in the process of procuring the necessary paper and arrangements were made to begin the counterfeit operation at approximately 4:30 p. m. the next day, December 13, 1978, at Mr. Akerly's place of business.

11. On December 13, 1978, Agents Sabruno and George Ogilvie went to Mr. Akerly's place of business. Agent Sabruno went inside and Mr. Akerly showed him where the press would be installed and the printing supplies.

12. At approximately 4:30 p. m., on December 13, 1978, Agent Sabruno returned with Agent Lightsey and both agents entered the premises, met Mr. Akerly, at which time all three individuals began the counterfeit operation.

13. At this time, Agent Lightsey placed the front plate on the printing press and Mr. Akerly turned the machine on.

14. At this time, Leon Akerly did, in the presence of Agent Sabruno, attempt to counterfeit United States currency in denominations of $20, $50 and $100. These counterfeit obligations were printed with the use of the subject printing press, on one side of a sheet of paper only, and had a face value of approximately $146,000.

15. On December 13, 1978, a search warrant was obtained for Mr. Akerly's place of business and executed at approximately 7 p. m. The government seized partially complete $20, $50 and $100 counterfeit bills and counterfeit paraphernalia and placed Mr. Akerly under arrest.

## CONCLUSIONS OF LAW

Prior to its seizure, the defendant printing press was owned and possessed by Leon Frederick Akerly and had a value of approximately $9,000.

 In a forfeiture action, the burden is on the United States to prove by a preponderance of the evidence that the press was used in a manner which would subject it to forfeiture. This burden may be sustained by showing in a forfeiture proceeding that the press was actually used to counterfeit United States currency. It may also be sustained by showing that the owner was convicted of counterfeiting. *Mayo v. United States*, 425 F.Supp. 119, 122 (1977).

■ There was no conviction for counterfeiting resulting from the facts recited in this case, since the government dismissed the complaint and no indictment was issued. However, we find that the testimony offered at trial shows by a preponderance of the evidence that the printing press was actually used in an attempted counterfeiting operation. Mr. Akerly, the owner of the press, intended to print counterfeit currency in various denominations and actively participated in the entire scheme, including the actual printing at which time the defendant press was used. Although Mr. Akerly stated that he would present a defense that these counterfeit bills were part of an advertising scheme, he did not produce any evidence whatsoever of this alleged defense at trial.

The use of defendant printing press owned by Mr. Akerly was in violation of 18 U.S.C. §§ 471 and 474. Under the recited findings of fact, the seized printing press is, therefore, subject to forfeiture pursuant to 18 U.S.C. § 492.