Thomas J. WATTS, Sr. and Equipment Rentals, Sales & Service, Inc.

v.

Mark KROCZYNSKI, Special Agent Crim. Investigation Div. of IRS and Roger Rubrecht, Agent FBI.

No. 85–3546.

United States District Court,
W.D. Louisiana,
Lake Charles Division.

June 10, 1986.

Frank M. Brame, Lake Charles, Robert I. White, Houston, Tex., for plaintiff.

Joseph S. Cage, Jr., U.S. Atty., Shreveport, La., Thomas B. Thompson, Asst. U.S. Atty., Lafayette, La., for defendants.

## OPINION

VERON, District Judge.

This matter is before the Court upon the petition of plaintiffs, Thomas J. Watts, Sr. and Equipment Rentals, Sales & Service, Inc. for the issuance of a preliminary and permanent mandatory injunction requiring the defendants to return documents, records and papers seized from plaintiffs on December 5, 1985 pursuant to five search warrants issued by the United States Magistrate. Plaintiffs furthermore seek relief pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure, requiring the Government to return that property which allegedly was unlawfully seized by the said defendants on December 5, 1985. The Court having heard the merits of the case on January 3, 1986, and having had ample opportunity to review the evidence and the applicable law, now rules as follows.

## I. FINDINGS OF FACT

On December 3, 1985, a total of five search warrants were presented to United States Magistrate Joseph Tritico, along with the affidavit of the defendant Mark Kroczynski, Special Agent for the Criminal Investigation Division of the Internal Revenue Service. Kroczynski's affidavit (Plaintiffs' Exhibit No. 9) alleged a scheme of tax fraud involving both fraudulent and illegal business expense deductions claimed by Equipment Rentals, Sales & Service, Inc., as well as a scheme of illegal kickback payments made to particular persons for their approval of false and fraudulant invoices and overbillings regarding rental of equipment from Equipment Rental Sales & Service, Inc. [hereinafter referred to as "ERSSI"]. The affidavit provided, *inter alia*, that Watts previously had been assessed taxes and penalties involving ERSSI's failure to document its claimed business expenses, and that ERSSI was currently claiming expenses on its books which were actually the expenses incurred in the conduct of other businesses owned

by Watts. The affidavit also included several factual statements regarding fraudulent invoicing and overbilling practices of Watts and ERSSI made with regard to a number of businesses, including kickbacks made to government contract employees at the Strategic Petroleum Reserve at Hackberry, Louisiana. Based upon the factual information contained in the affidavit, the magistrate determined that probable cause existed and issued search warrants for ERSSI's main office, ERSSI's former office, a Sears Catalog Store in Cameron, Louisiana, the Watts' residence and the garage at Watts' home.

During the late afternoon of December 4, 1985, Kroczynski met with the eighteen government agents who would participate in the search. He advised the agents about the alleged crimes of Watts and ERSSI, provided them with photocopies of the search warrants, and generally explained what they expected the particularized documents to show. The agents were then split up into search groups relative to each of the premises to be searched. Each of these search groups were assigned a team leader with whom they then met and received further instructions. The entire meeting lasted approximately one and one-half to two hours.

The agents again met briefly on the morning of December 5, 1985 at the IRS office in Lake Charles, where they split up into their groups of five teams. The teams thereupon went to the premises authorized to be searched and executed the warrants. Various records and documents were seized from the main office of ERSSI, the Sears Catalog Store, and the Watts' residence. No records were seized from the premises of ERSSI's former office or the garage at the Watts' residence. Inventories of the documents and items seized are in evidence. Plaintiffs' Exhibit Nos. 6, 7, 8. Throughout the course of the searches, the group leaders and Kroczynski were available to answer questions of the searching agents, who had been provided with copies of the search warrants. As testified to by IRS Special Agent Jo Ann Hernandez, who was involved in the search of ERSSI's main office, she seized and tagged for seizure records relative to Watts' and ERSSI's income tax returns and made decisions as to what should be seized in accordance with the language contained in the search warrant itself. Ms. Hernandez furthermore testified that she made a cursory examination of the contents of the file cabinets which were seized to determine whether they contained records within the scope of the search warrant, but did not examine the contents of each cabinet drawer on a document by document basis.

At the request of employees at the Sears and ERSSI main office locations, agents permitted photocopying of particular business records needed to carry on the affairs of each of those businesses. Subsequent to the seizure of documents, any specific records requested by the plaintiffs have been photocopied and made available to plaintiffs in order that they may carry on their business affairs.

## II. CONCLUSIONS OF LAW

### A. Jurisdiction and Venue

■ This Court is vested with jurisdiction over the present controversy pursuant to 28 U.S.C. § 1331 and the doctrine of anomalous jurisdiction. *See Linn v. Chivatero*, 714 F.2d 1278, 1281 (5th Cir.1983); *Mason v. Pulliam*, 557 F.2d 426, 429 (5th Cir.1977); *Richey v. Smith*, 515 F.2d 1239, 1243 (5th Cir.1975) (citing Rule 41(e) of the Federal Rules of Criminal Procedure and the "general equitable jurisdiction" of the federal courts).

Venue rests with the Court because both defendants reside within the Western District of Louisiana, Lake Charles Division and are principally employed in their governmental capacities in said district. Moreover, the searches and seizures complained of by plaintiffs occurred within the Western District of Louisiana, Lake Charles Division. 28 U.S.C. § 1391(b).

### B. Preliminary and Permanent Mandatory Injunction

■ While the ordinary function of a preliminary injunction is to preserve the

status quo pending a final determination of the merits of plaintiffs' claims after a full hearing, a trial on the merits of all of plaintiffs' claims was held by the Court on January 3, 1986. Because the matter is not *preliminary*, the Court will address itself to the permanent mandatory injunction and the relief pursuant to Rule 41(e) sought by plaintiffs.

A permanent injunction, unlike those which are preliminary in nature, is to be granted only after a full trial on the merits of the particular suit. *Shanks v. City of Dallas, Texas*, 752 F.2d 1092 (5th Cir.1985). In order to be entitled to permanent injunctive relief for a constitutional violation, a plaintiff must first establish the fact of the violation. *Rizzo v. Goode*, 423 U.S. 362, 377, 96 S.Ct. 598, 607, 46 L.Ed.2d 561 (1976). Plaintiffs must then demonstrate the presence of two other elements: continuing irreparable injury if the injunction does not issue, and the lack of an adequate remedy at law. *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506, 79 S.Ct. 948, 954, 3 L.Ed.2d 988 (1959); *Newman v. Alabama*, 683 F.2d 1312, 1319 (11th Cir.1982), *cert. denied* 460 U.S. 1083, 103 S.Ct. 1773, 76 L.Ed.2d 346 (1983).

■ Without needing to reach the issue of the Fourth Amendment violations alleged by the plaintiffs, the Court finds that the plaintiffs have utterly failed to establish any continuing irreparable injury if an injunction does not issue. The Government has represented and the Court has ordered that the Government will make available to plaintiffs copies of any and all records and/or documents seized which are necessary in the conduct of plaintiffs' business and other affairs. No evidence whatsoever was presented by plaintiffs to establish irreparable harm and there is no evidence before the Court that any such harm has been or will be suffered by either of the plaintiffs if injunctive relief is not granted. Due to the failure of the plaintiffs to establish this essential element of their burden of proof, the issuance of a permanent injunction is DENIED.

**C. Rule 41(e) Motion for Return of Property**

■ It has been observed that Rule 41 "is a crystallization of a principle of equity jurisdiction," *Smith v. Katzenbach*, 351 F.2d 810, 814 (D.C.Cir.1965), which is to be exercised with caution and restraint, and subject to equitable principles. *Hunsucker v. Phinney*, 497 F.2d 29, 34 (5th Cir.1974), *cert. denied* 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975). While the exercise of this Court's equitable jurisdiction cannot be justified on the ground that the original materials are necessary to conduct plaintiffs' business or businesses,[1] the Court nevertheless chooses to retain jurisdiction due to the very real threat of a criminal indictment being issued against the plaintiffs.

Certainly where a criminal indictment is threatened one reason for early adjudication of the admissibility of evidence exists which is not present where only a civil proceeding is threatened: the criminal indictment itself carries a danger of stigmatization which may not be removed by a determination in the criminal trial that the evidence on which the indictment was based is inadmissible. *Hunsucker, supra* at 33.

■ Once the Court's equity jurisdiction has been recognized, in order to prevail on a motion pursuant to Rule 41(e), the plaintiffs must show that (1) they are entitled to lawful possession of the seized records and documents, and (2) the seizure was illegal. Advisory Committee Note, Fed.R.Crim.Pro. 41, 1972 Amendment. The plaintiffs claim that the seizure of documents by the defendants was illegal because (1) the supporting affidavits were insufficient to establish probable cause that federal crimes had been committed, (2) the search warrants were general warrants, and (3) the seizure of documents was made in flagrant disregard of the scope of the warrants, all in violation of plaintiffs' Fourth Amendment rights.

---

1. See discussion, *supra*.

### 1. Probable Cause

■ Plaintiffs attack the sufficiency of defendant Krocynski's affidavit, which supported the issuance of the search warrants, claiming that it is filled with conclusory allegations unsupported by particular facts. The Government, on the other hand, contends that the affidavit sets forth facts clearly implicating plaintiffs in a broad scheme involving tax fraud, the submission of fraudulent and false invoices to various and particular businesses, and the payment of illegal kickbacks.

In determining whether probable cause was established by the affidavit supporting the search warrants, this Court is bound to follow the "totality of the circumstances" test set forth by the Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527, *reh denied*, 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983). In *Illinois v. Gates*, the Supreme Court rejected a rigid test for determining probable cause and reaffirmed the court's earlier "totality of circumstances" analysis for probable cause determinations.

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed. *Id.*, 103 S.Ct. at 2332, *citing Jones v.*

*United States*, 362 U.S. 257, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960).

The affidavit supporting an application for a search warrant must provide the magistrate "sufficient information ... to allow that official to determine probable cause." 103 S.Ct. at 2333. It is well established that the magistrate may draw reasonable inferences from the information in the affidavit and the "magistrate's determination of probable cause should be paid great deference by reviewing courts." *Id.*, 103 S.Ct. at 2331, *citing Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 591, 21 L.Ed.2d 637 (1969). In doubtful or marginal cases, resolution of the question whether probable cause exists "should be largely determined by the preference to be accorded to warrants." 103 S.Ct. at 2331 n. 10.

The affidavit in the case at bar meets the requirements set forth in *Gates*, and the plaintiffs' contentions that Kroczynski's assertions are nothing more than conclusions of fact are not borne out when the affidavit as a whole is properly considered, *except* as to the conclusory statement regarding kickback payments being paid to government contract employees by Watts in return for confidential bid information.[2] Kroczynski's affidavit details a scheme of tax fraud, through fraudulent and illegal business expense deductions, as well as a scheme of illegal kickback payments made to particular and various persons for approving false and fraudulent invoices regarding equipment rental. The affidavit sets forth several details of particular kickbacks received by at least two named Superior Oil Company employees from Watts for approving the payment of fraudulent and/or altered

**2.** Paragraph 8 of Kroczynski's affidavit provides:

> On October 2, 1985, Robert Breese, Inspector General's Office, Department of Energy (DOE), New Orleans advised me that his office is currently conducting an investigation relative to kickback payments to government contract employees allegedly being paid to furnish confidential bid information to Tommy Watts d/b/a ERSSI. Breese advised me that Watts is using the bid information to obtain favored status, and is also a suspect in

causing invoices and bid records to be altered in violation of federal law, Title 18, USC, Sections 281, 641, 1001 and 1341.

While there are sufficient facts set forth elsewhere in the affidavit to establish probable cause that federal crimes had been committed with regard to the fraudulent alteration of invoices, mentioned in this paragraph, no underlying facts whatsoever are related anywhere in the affidavit as to kickbacks being paid in return for confidential bid information.

invoices, kickbacks made by Watts to a named POSSI employee in the form of checks made payable to phony companies, and POSSI employees receiving kickbacks relative to their work at the Strategic Petroleum Reserve in Hackberry, Louisiana. Facts regarding plaintiffs' scheme of illegal kickback payments involving the equipment rental through the preparation of fraudulent and/or altered invoices are clearly set forth in the affidavit, and the magistrate certainly had probable cause to believe that federal crimes had probably been committed with respect thereto.

Plaintiffs would have this Court find that probable cause is lacking, however, because the affidavit does not set forth all of the elements of those crimes which are cited in the affidavit to have been probably committed. The law is clear, however, that there is no need for the affiant to allege all of the specific elements of the crimes in order to support a finding that they probably have been committed. *Illinois v. Gates, supra,* 103 S.Ct. at 2330; *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969); *Brinegar v. United States,* 338 U.S. 160, 173, 69 S.Ct. 1302, 1309, 93 L.Ed. 1879 (1949).

> "[T]he *quanta* ... of proof" appropriate in ordinary judicial proceedings are inapplicable to the decision to issue a warrant. *Brinegar, supra,* 338 U.S., at 173, 69 S.Ct., at 1309. Finely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision. ... [I]t is clear that "only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." *Gates, supra,* 103 S.Ct., at 2330, *citing Spinelli, supra,* 393 U.S., at 419, 89 S.Ct., at 590.

Plaintiffs complain, for instance, that 18 U.S.C. § 1341 involves the crime of fraud by use of the mails but nowhere in Kroczynski's affidavit does it allege that fraudulent invoices were mailed. Such an argument is ludicrous, as all particular elements

need not be alleged and, in any event, the magistrate could properly infer that the use of the mails had occurred during the course of the fraudulent billing scheme.

■ Kroczynski's affidavit likewise sets forth specific facts to constitute probable cause regarding a scheme of tax fraud through false and illegal business expense deductions. The affidavit sets forth that Watts had been previously assessed taxes and penalties involving ERSSI's failure to document its claimed business expenses and furthermore sets forth facts of ERSSI's claiming business expenses at present which were actually expenses of other businesses owned by Watts. Kroczynski also makes the statement that Watts has filed no amended returns "correcting this matter." Thus, despite plaintiffs' contention that the affidavit fails to state that any federal tax return which was filed was incorrect, a clear inference can be drawn that plaintiffs probably had filed fraudulent tax returns in which false business expenses were improperly claimed as deductions. Thus, probable cause also existed regarding the perpetuation of a tax fraud scheme by plaintiffs.

■ The affidavit fails, however, to assert facts underlying the affiant's claim that plaintiffs probably had violated federal law by altering bid records and by paying kickbacks to government contract employees for their providing confidential bid information to Watts. The allegation contained in the affidavit[3] is a mere conclusory statement that gave the magistrate virtually no basis at all for determining that any federal crime involving bid information probably had been committed. *See Gates, supra,* 103 S.Ct., at 2332; *see also Nathanson v. United States,* 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933).

Plaintiffs are also correct in their assertions that there is absolutely nothing in the affidavit which would support a finding of probable cause that a violation of 18 U.S.C. § 281 and/or 18 U.S.C. § 1345 had been committed. In fact, 18 U.S.C. § 1345 is not

---

3. See note 2, *id.*

even a penal statute, and only authorizes an injunction against fraud in particular circumstances. Certainly, the affidavit was inartfully drawn insofar as it alleges violations of these two sections of Title 18 and violations of federal law regarding the confidential bid information and bid alterations. Nevertheless, the probable cause existing as to the tax fraud and invoice fraud schemes serves to uphold the constitutional validity of the searches and seizures, and no places were searched pursuant to the warrants for which probable cause did not exist. *See United States v. Freeman,* 685 F.2d 942 (5th Cir.1982).

■ Moreover, the Court finds that the inclusion of these alleged violations was minor negligence on the part of the affiant and does not demonstrate that the affidavit was made by Kroczynski with deliberate falsehood or with reckless disregard for the truth. In *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court recognized the presumption of validity which exists with respect to the affidavit supporting a search warrant, and held that before an attack may be launched on the credibility of the affiant by means of impeachment or cross-examination, "[t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Id.,* 98 S.Ct. at 2684. In the case at bar, plaintiffs utterly failed to meet the showing required under *Franks* and were therefore properly disallowed from cross-examining Kroczynski about the supporting affidavit. Plaintiffs attempted to show that Kroczynski made the affidavit with a "reckless disregard for the truth" by his employment of such terms as "charged to the books," relying on the testimony of their "expert" accountant that "charged" is an inexact term not customar-

ily employed in accounting and that one could not conclude, from the use of that term within the affidavit, whether plaintiffs' tax returns were correct or incorrect. Such an attack is insufficient to show that Kroczynski made the affidavit with a careless or reckless disregard for the truth. "Allegations of negligence or innocent mistake are insufficient." *Id.* 98 S.Ct. at 2684. By failing to use "accounting terminology" in his affidavit, it cannot be said that Kroczynski was acting in reckless disregard of the truth.

Nor can it be said that Kroczynski's failure to employ exact accounting terminology made it improbable that violations of federal law had occurred.

> In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949).

Moreover, the Supreme Court has "recognized that affidavits 'are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleading have no proper place in this area'." *Gates, supra,* 103 S.Ct. at 2330, *citing United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965). Kroczynski's affidavit in the case at bar clearly sets forth the underlying factual circumstances regarding the violation of several federal crimes. While the affidavit may have been inartful and inexact in some respects, it clearly sets forth sufficient facts from which inferences could be drawn to support the magistrate's finding of probable cause with respect to several federal crimes. As observed by the Supreme Court in *Ventresca:*

> Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rub-

ber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hyper-technical, rather than a commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubt-ful or marginal cases in this area should be largely determined by the preference to be accorded to warrants. *Id.*, 85 S.Ct. at 746.

Not only are factual details provided in Kroczynski's affidavit, but Kroczynski credits particular sources of information with having made statements against their own personal interests, i.e., in admitting to have received kickback payments for ap-proving fraudulent and/or altered invoices composed by Watts, thereby lending credi-bility to their stories. Moreover, the state-ments of particular informants were cor-roborated by information from other feder-al agents. The magistrate in the case at bar certainly had a substantial basis for concluding that the searches and seizures would uncover evidence of wrongdoing by Watts and ERSSI, and the Fourth Amend-ment requires no more. *See Gates, supra* 103 S.Ct. at 2331.[4]

### 2. Particularity of Warrants

■■■ Plaintiffs furthermore argue that the five warrants were couched in such broad language that they authorized gener-al rummaging through and wholesale sei-zure of *all* records on plaintiffs' premises. As such, plaintiffs contend, the warrants violated the Fourth Amendment which re-quires that they "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. Amend.IV. It has been recognized that this requirement is meant to prevent "gen-eral, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire,* 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971). As explained by the Fifth Circuit:

> The search must be one directed in good faith toward the objects specified in the warrant or for other means and instru-mentalities by which the crime[s] charged had been committed. It must not be a general exploratory search through which the officers merely hope to discover evidence of wrongdoing. *Gurleski v. United States,* 405 F.2d 253, 258 (5th Cir.1968).

Several courts have recognized the diffi-culties encountered by agents investigating complex white-collar crimes when attempt-ing to frame a warrant with particularity. The United States Supreme Court has ob-served that there are particular

scheme[s] whose existence could be proved only by piecing together many bits of evidence. Like a jigsaw puzzle, the whole "picture" of [such schemes] could be shown only by placing in the proper place the many pieces of evidence that, taking singly, would show compara-tively little. The complexity of an illegal scheme may not be used as a shield to avoid detection when the State has dem-onstrated probable cause to believe that a crime has been committed and probable cause to believe that evidence of this crime is in the suspect's possession. *An-*

---

**4.** The Court rejects plaintiffs' contention that the magistrate applied an unconstitutional legal standard in determining the existence of proba-ble cause. Plaintiffs cite the magistrate's testi-mony that he reviewed Kroczynski's affidavit carefully and concluded there was cause to be-lieve that several crimes *possibly* had been com-mitted, contending that the magistrate did not conclude that there was a "fair probability" that federal crimes had been committed. The magis-trate's testimony was clear that he found that probable cause existed before he authorized is-suance of the warrants. Such an attack upon the legal prowess of the well-experienced and highly esteemed magistrate is ludicrous and an affront to the dignity of the Court. Taking one phrase of the magistrate's testimony, secured by having subpoenaed the magistrate to appear, is insufficient to discredit the legal acumen of the Magistrate and is an utterly crude attempt to invalidate the warrants. Probable cause existed for the issuance of the warrants, and the magis-trate's finding is afforded great deference by this Court.

*dresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 2748–49 n. 10, 49 L.Ed.2d 627 (1976); *see also United States v. Wuagneux*, 683 F.2d 1343, 1349 (11th Cir.1982). In cases involving allegations of various fraudulent activities, "reading the warrant with practical flexibility entails an awareness of the difficulty of piecing together the 'paper puzzle'." *United States v. Abrams*, 615 F.2d 541, 548 (1st Cir.1980) (Campbell, J., concurring) (investigators in fraud cases do not and oftentimes cannot know in advance exactly what will be found in business files).

In the case at bar, Kroczynski's affidavit provided probable cause to suspect a scheme of tax fraud through fraudulent and illegal business expense deductions, as well as a scheme of illegal kickback payments made by plaintiffs to particular persons who approved false and fraudulent invoices and overbillings regarding equipment rentals. "When circumstances make an exact description of instrumentalities a virtual impossibility, the searching officer can only be expected to describe the generic class of items he is seeking." *James v. United States*, 416 F.2d 467, 473 (5th Cir. 1969). The items to be seized were as precisely identified as the nature of plaintiffs' alleged activities permitted. The warrants involved specifically limited the scope of the search to those records pertaining to the tax liability of Thomas J. and Susan Watts and particular business records for a specific time period.[5] Thus, contrary to plaintiffs' contentions, the warrants *did not* authorize the seizure of "all the records," nor did they allow agents to seize *any* information pertaining to *any* federal crime. *Cf. Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir.1985) (wherein "what [the warrant] gave was carte blanche for government agents to take anything that they saw whether it was nailed down or otherwise, and, indeed, ... that's precisely what did happen"). Clearly, the warrants at issue were not global.

*3. Execution of Warrants*

Plaintiffs argue that even though the search warrants may meet the particularity requirement of the Fourth Amendment, the conduct of agents in executing the warrants exceeded any reasonable interpretation of the warrants' provisions so as to render the entire seizure unconstitutional. While the Court finds that some documents were seized from the plaintiffs' premises which exceeded the scope of the warrants, there was no "flagrant disregard" of the terms of the warrants, and therefore the seizure of items outside the scope of the warrants will not affect admissibility of items properly seized. *United States v. Wuagneux*, 683 F.2d 1343, 1354 (11th Cir.1982); *United States v. Crozier*, 777 F.2d 1376, 1381 (9th Cir.1985); *United States v. Lambert*, 771 F.2d 83, 93 (6th Cir.1985). The testimony of those agents who participated in the search and seizure indicated that they made a good faith effort to stay within the scope of the warrant. Despite plaintiffs' complaints that entire file cabinets were seized, it has been held reasonable for agents to remove intact files, books and folders when a particular document within the file was identified as falling within the scope of the warrant. *Wuagneux, supra* at 1353; *see United States v. Beusch*, 596 F.2d 871 (9th Cir. 1979). A requirement to the contrary "would substantially increase the time required to conduct the search, thereby aggravating the intrusiveness of the search." *Beusch, supra* at 876. While the Court does not condone the seizure of items not described in the warrant, the agents' violations of the warrants' terms were not flagrant and therefore the seizure of relevant items is not invalidated. *Wuagneux supra; Crozier, supra.*

Finding that the agents acted in good faith, the Court returns to those items which were seized and were not within the

5. The business records within the scope of the search were enumerated as consisting of: "general ledgers, ledgers of accounts payable/receivable and notes payable/receivable, payroll records, bank statements, deposit slips, cancelled checks, sales and purchase invoices and bid copies and contracts for the period 1/1/80 through present...."

scope of the warrants. Certainly, a search must be limited to the terms of the warrant. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 394 n. 7, 91 S.Ct. 1999, 2004 n. 7, 29 L.Ed.2d 619 (1971). Keeping within the bounds of the warrants, agents did not seize anything from two of the five premises which they were authorized to search. Particular papers were seized, however, from the residence of Thomas and Susan Watts which were beyond the scope of the search warrant for that location. In accordance with the facts adduced at trial, the Court finds that the four Certificates of Deposit and a list of houses, in Mrs. Thomas Watts' handwriting, which she wanted to consider to purchase were clearly beyond the scope of the warrant.

The evidence adduced at trial (see Plaintiffs' Exhibit No. 7) also indicated that documents were seized from the Sears Catalog Store which were beyond the scope of the warrant which authorized the search of that location, which included: documents from the year 1979; credit applications filed by Sears customers from January through December of 1984, an inventory record for January through December of 1984; employment application file; parts return inventory for the years 1982, 1983 and 1984, and the customer returns manifests for 1984; correspondence in file folder; product registration file, 1980–85, and charge account file; and inventories for 1981, 1982, 1983.

Regarding the seizure of documents from the main office of ERSSI, the evidence adduced at trial (see Plaintiffs' Exhibit No. 6) established that the following materials were seized which were beyond the scope of the search warrant for that location: seized from the receptionist area —1 brown envelope of memo pads; 1 brown envelope of day-at-glance and folder from desk; 1 brown envelope of welder's information; telephone/address book; seized from the first floor of the warehouse—customer cutoff lists; brown envelope, note pads; brown envelope, permit information; roladex; telephone books; seized from Thomas Watts' office—phone

index and legal documents on Coastal Power; brown envelope, records of Deep Water Project and port services; telephone/address information; outside price lists, 1980; seized from Tanya Clay's area—employee file cards; blank checks; blank contracts; tray material on West Hackberry, Bayou Mound, awarded bids or bids; telephone index; daily time tickets, Louisiana Department of Labor; secretaries telephone index; credit application information.

The evidence established at trial by the plaintiffs failed to prove that any other documents seized were beyond the permissible scope of the search warrants. In this regard, the Court notes that those documents having a sufficient nexus to the crimes being investigated may be seized at the time agents are properly executing a warrant authorizing a search for particular items. *Creamer v. Porter,* 754 F.2d 1311, 1318 (5th Cir.1985). As plaintiffs failed to prove that any other documents other than those enumerated above were seized in violation of the Fourth Amendment, their motion pursuant to Rule 41(e) is DENIED IN PART as to those documents. As regards the material enumerated by the Court to have been seized which were not within the scope of the warrants, the plaintiffs motion for return of that property pursuant to Rule 41(e) is GRANTED IN PART as to those documents and the Government is ORDERED to return the originals and all copies of those documents within a period of 15 days from the entry of judgment.

Moreover, as the Court has determined that there was not probable cause to believe that plaintiffs had violated any federal law regarding confidential bid information and bid alterations, any information seized by agents which concerns bids and which has no nexus to the other properly-alleged federal violations must be returned to plaintiffs. As evidenced by the inventory of items seized from ERSSI's main office (Plaintiffs' Exhibit No. 6), this includes: from Henry Dinger, Jr.'s office—1 brown envelope of 3 bid packages from credenza; 1 brown envelope of bid pack-

ages (which also contained welders information); 1 set expandable file folder labelled "Active Bids & Quotations"; 1 set expandable file folder labelled "Inactive Bids & Quotations; from Thomas Watts' office"—brown expandable folder of contract bids; 3 volumes of contract bid specifications; seized from Tanya Clay's area—bid records. The Government is also ORDERED to return the originals and all copies of these documents within a period of 15 days from the entry of judgment.