**UNITED STATES of America**

v.

**Ceverilo CHAMBERS**

**Criminal Action No. 94–585 NHP.**

United States District Court,
D. New Jersey.

April 5, 2000.

Perry A. Carbone, Assistant U.S. Attorney, Robert J. Cleary, United States Attorney, Newark, NJ, for plaintiff.

Mr. Ceverilo Chambers, Wakefield District, Thompsontown Post Office, Clarendon, Jamaica, West Indies, pro se.

POLITAN, District Judge.

Dear Litigants:

This matter initially came before the Court pursuant to a Remand Order issued by the United States Court of Appeals for the Third Circuit. *See United States v. Chambers,* 192 F.3d 374 (1999). In accordance with the Remand Order, this Court held a hearing on March 2, 2000. As a result of that hearing, the Government now seeks to dismiss the case. For the reasons stated herein, the motion by the Government to dismiss the case is **GRANTED.** Accordingly, this case is **CLOSED.**

## BACKGROUND

On November 3, 1994, United States Customs inspectors conducting a routine border check in El Paso, Texas stopped a tractor-trailer and discovered 443 kilograms of marijuana and 35.87 kilograms of cocaine packed in boxes in the trailer. The driver told Drug Enforcement Administration (hereinafter "DEA") agents that the owner of the truck was Ceverilo Chambers (hereinafter "Chambers"), who had told him to drive the truck to New Jersey. The DEA agents drove the truck to New Jersey, and on November 7, 1994, supervised delivery of the truck to the appointed location, where Chambers was arrested as he unloaded the drugs. The DEA agents seized from him keys, a wallet, some papers, a 1993 Toyota Corolla and a 1987 Road Ranger tractor-trailer.

On February 28, 1995, Chambers pled guilty to drug related offenses and was sentenced to prison. After his conviction was affirmed and other criminal proceedings had ended, Chambers filed a motion pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure for return of the property seized by the DEA agents from him when he was arrested. The United States opposed the motion, arguing that it was moot because the United States no longer possessed the property in question.[1]

On July 23, 1997, this Court denied Chambers' motion, finding that the 1987 Road Ranger had been forfeited, the 1993 Toyota Corolla had been released to a repossession company, the papers had been destroyed, and that the keys and wallet had been returned to Chambers' girlfriend, at his request. As a result, Chambers filed an appeal.

---

**1.** At the time, DEA records reflected that the papers were destroyed, the Toyota was re-leased to a repossession company and the tractor-trailer was forfeited.

The United States Court of Appeals for the Third Circuit vacated the Order by this Court denying the motion by Chambers for the return of his property and remanded for further proceedings to determine whether the United States' disposition of Chambers' property was proper, and what remedy he would have against the United States if the disposition were not proper.[2]

In accordance with the Circuit Court's Remand Order, this Court scheduled a hearing for March 2, 2000. Chambers did not attend. In fact, Chambers did not respond in any way to the Court's notice, which was sent to the address provided by the Clerk's Office for the United States Court of Appeals for the Third Circuit. The United States submitted an affidavit attaching documents, which has not been contested. The United States now seeks dismissal of this case.

## DISCUSSION

■ As a threshold matter, the United States Court of Appeals for the Third Circuit held that a district court has subject matter jurisdiction to entertain a Rule 41(e) motion filed after the termination of criminal proceedings. *Chambers,* 192 F.3d at 376. Such a motion "is treated as a civil proceeding for equitable relief." *Id.*

The Court of Appeals in this case instructed this Court as follows. First, the Court of Appeals provided that, if the Government asserts that it no longer has the property sought, this Court "must determine, in fact, whether the government retains possession of the property." *United States v. Chambers,* 192 F.3d 374, 378 (1999). If the Court determines that the Government no longer possessed the property, the Court "must determine what happened to the property." *Id.*

The United States has submitted an affidavit authored by Joseph Klimek, Special Agent with the DEA, attaching documents detailing that the property is no longer in its possession. Based on the affidavit and documents proffered by the Government, which have not been disputed by Chambers, this Court finds that the Government has met its burden to demonstrate that the 1987 Road Ranger has been forfeited, the 1993 Toyota has been released to a repossession company, the keys and wallet have been returned to Chambers' girlfriend, and the papers have been destroyed.[3]

Second, the Court of Appeals found that this Court "should have taken evidence to determine whether the Government properly disposed of [Chambers'] property." *Chambers,* 192 F.3d at 375. Based on the undisputed affidavit and documents referenced above, the Court finds that the Government has properly disposed of the property. Notably, Chambers has shown nothing to indicate to the contrary.

Finally, the Court of Appeals instructed that, if this Court concluded that the Government's actions with regard to the 1993 Toyota or to his papers "were not proper," this Court must "determine what remedies are available." *Chambers,* 192 F.3d at 378. Although, as set forth above, there has been no impropriety, the Court finds that the unusual circumstances of this case—particularly the movant's non-appearance—make it prudent to address the issue at this juncture.

Assuming *arguendo* that the Government's actions were not proper and, accordingly, this Court had to delve into the issue of "remedies," it is significant to note that the movant, defendant Chambers, sought only one remedy—the return of his property. The Government cannot return

2. The Remand Order noted that Chambers should be permitted to amend his motion to assert a collateral attack on the forfeiture since he asserts he was not provided notice of it. Chambers has not done so.

3. Because it is unrebutted that the Toyota was released to the repossession company, it is

not "material" whether that release was on December 19, 1994 or 1995. *See Chambers,* 192 F.3d at 376 n. 2. In any event, based upon the Government's affidavit, this Court finds that the release was on December 19, 1994.

the property, however, because it is no longer in the Government's possession. Neither Chambers nor the Third Circuit has suggested any other remedies. The Third Circuit has simply stated that a Rule 41(e) motion, filed after the termination of criminal proceedings, "is treated as a civil proceeding for equitable relief." *Chambers*, 192 F.3d at 376.

Despite the designation of this proceeding as an equitable one, some courts have suggested that a court under Rule 41(e) "has power to award damages incident to the complaint." *United States v. Martinson*, 809 F.2d 1364, 1367–68 (9th Cir.1987); *United States v. Kanasco, Ltd.*, 123 F.3d 209, 210 n. 1 (4th Cir.1997); *Mora v. United States*, 955 F.2d 156, 159–60 (2d Cir. 1992).[4] Other courts have disagreed. *See Pena v. United States*, 157 F.3d 984, 986 (5th Cir.1998); *United States v. Proca*, 535 F.Supp. 1343, 1345 (N.D.Cal.1982), *aff'd*, 735 F.2d 1374 (9th Cir.1984); *United States v. Thrush*, 79 F.R.D. 234, 235 n. 1 (M.D.Pa.1978); *Mayo v. United States*, 425 F.Supp. 119, 122 (E.D.Ill.1977).

As the Fifth Circuit explained in *Pena*, the courts which have suggested that money damages are available under Rule 41(e) have ignored the principle of sovereign immunity:

> The principle of sovereign immunity protects the federal government from suit except insofar as that immunity is waived. A waiver must be unequivocably expressed in statutory text and will not be implied. *See Lane v. Pena*, 518 U.S. 187, 192, 116 S.Ct. 2092, 2096, 135 L.Ed.2d 486 (1996) (citations omitted). Rule 41(e) makes no provision for monetary damages, and we will not read into the statute a waiver of the federal government's immunity from such damages.... [Defendants] may not maintain

a suit against the United States for monetary damages under Rule 41(e).

*Pena*, 157 F.3d at 986. This Court agrees.

■■■ It is a fundamental principle of sovereign immunity that federal courts have no jurisdiction over suits against the United States unless Congress, via a statute, expressly and unequivocally waives the United States' immunity to suit. *See United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). Moreover, when the Government does consent to be sued, "the terms of [the] waiver of sovereign immunity define the extent of the court's jurisdiction." *United States v. Mottaz*, 476 U.S. 834, 841, 106 S.Ct. 2224, 90 L.Ed.2d 841 (1986) (citation omitted). As the Fifth Circuit in *Pena* noted, "[n]umerous Supreme Court decisions hold that courts should construe statutes against waiver [of sovereign immunity] unless Congress has explicitly provided for it." *Pena*, 157 F.3d at 986 (citations omitted). "[W]aivers of the Government's sovereign immunity, to be effective, must be 'unequivocably expressed,'" and any such waiver must be strictly construed in favor of the sovereign. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33–34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) (citations omitted).

■■■ Outside the context of an action to enforce a contractual right, and absent a specific statute which supplies a cause of action against the United States, the two avenues available to satisfy a claim against the United States for negligent disposition of property are the Administrative Procedures Act ("APA") and, for breaches of common law tort duties, the Federal Tort Claims Act ("FTCA").[5] In this case, however, the waivers of sovereign immunity supplied by those statutes do not apply to this matter.

■■■ By declaring that a claim seeking judicial review of agency action shall not "be dismissed nor relief therein be denied

---

**4.** The Third Circuit cited these cases for other propositions, but noticeably did not mention, let alone endorse, their suggestions concerning monetary damages.

**5.** There has been no allegation that the disposition of property here involved intentional wrongdoing.

on the ground that it is against the United States," the 1976 amendment to the APA effected a limited waiver of sovereign immunity. *Bowen v. Massachusetts*, 487 U.S. 879, 891–92, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). That waiver, however, extends only to claims seeking relief *"other than money damages."* 5 U.S.C. § 702 (emphasis added). Because monetary relief in lieu of the return of Chambers' property would constitute "money damages," Chambers' motion for return of his property would have to be dismissed.

■ The distinction between "money damages" and "an equitable action for specific relief" that results in ordering the Government to pay the movant money was rather confusing prior to the Supreme Court clarifying the distinction in *Bowen v. Massachusetts*, 487 U.S. 879, 893–901, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988), and, more recently, in *Department of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260–263, 119 S.Ct. 687, 142 L.Ed.2d 718 (1999). "The fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" *Bowen*, 487 U.S. at 893, 108 S.Ct. 2722. Instead, the Court observed:

> The term 'money damages,' 5 U.S.C. § 702, we think, normally refers to a sum of money used as compensatory relief. Damages are given to the plaintiff to *substitute* for a suffered loss, whereas specific remedies 'are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled.'

*Id.* at 895, 108 S.Ct. 2722 (emphasis added) (quoting *Maryland Dep't of Human Resources v. HHS*, 763 F.2d 1441, 1446 (D.C.Cir.1985) (Bork, J.) (quoting, in turn, D. Dobbs, *Handbook on the Law of Remedies* 135 (1973))). Applying that analysis, the Court in *Bowen* held that requiring defendant HHS to pay money pursuant to the Medicaid statute was not "money dam-.

ages" but rather specific relief because the payment was not "money in **compensation** for the damage sustained by the failure of the Federal Government to pay as mandated; rather, it [was] to enforce the statutory mandate itself, which happens to be one for the payment of money." *Id.* at 900, 108 S.Ct. 2722 (emphasis added).

Following this reasoning, in *Department of the Army v. Blue Fox*, 525 U.S. 255, 119 S.Ct. 687, 142 L.Ed.2d 718 (1999), the Supreme Court held that there was no waiver of the Government's sovereign immunity where a subcontractor sought to enforce an equitable lien against the United States, alleging that the United States wrongfully paid out contract funds to a prime contractor when it should have retained the funds and paid them to the plaintiff subcontractor, because money was being sought as a substitute for the suffered loss.[6]

The present claim is analogous to that in *Blue Fox*: having been denied the return of his property, allegedly through the misdeeds of a federal agency, Chambers could not recover the money equivalent to the value of his property, because it is not "the very thing to which" the claimant "was entitled" but rather would be monetary compensation for his loss, a damage remedy for which there is no waiver of sovereign immunity under the APA. *Bowen*, 487 U.S. at 893–95, 108 S.Ct. 2722. Indeed, money damages cannot be "the very thing to which" anyone is "entitled" unless an Act of Congress creates a payment obligation or authorizes its creation. In other words, principles of equity alone are insufficient. *See, e.g., Office of Personnel Management v. Richmond*, 496 U.S. 414, 426, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990) ("equitable estoppel" is not "a basis for money claims against the Government"). In this case, there is no Act of Congress imposing a payment obligation on the United States where an agency cannot return lawfully seized property[7] because it has previously disposed of it.

---

6. Claimants in *Blue Fox* premised their claim on the Government's failure to require the prime contractor to post a Miller Act bond, as required by that statute.

7. Notably, movant has never alleged that the

■ Nor would the FTCA provide an avenue to recovery for the movant in this case. The FTCA's waiver of sovereign immunity is subject to specific exceptions, among them § 2680(c), which provides that the waiver of immunity contained in § 1346(b) shall not apply to:

Any claim arising in respect of . . . the detention of goods or merchandise by any officer of customs or excise or any other law-enforcement officer.

28 U.S.C. § 2680(c).

Hence, Chambers' claim would be barred by this exception, because it would be based on the "detention of goods" by a "law-enforcement officer."

For a time there was a split among the circuits regarding whether § 2680(c) barred only suits where the damages claimed were caused purely from the detention itself[8], as opposed to all suits that arose from the detention of goods.[9] *See generally Alliance Assurance Co. v. United States,* 252 F.2d 529 (2d Cir.1958). The Supreme Court decisively resolved this issue in *Kosak v. United States,* 465 U.S. 848, 853, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984) and held that § 2680(c) barred claims based on essentially all injuries to property sustained during its detention.

In its Opinion remanding this case, the Third Circuit mentions in *dicta* the case of *Mora v. United States,* 955 F.2d 156 (2d Cir.1992), a Second Circuit case that seemingly continues to follow the reasoning of *Alliance Assurance Co. v. United States,* 252 F.2d 529 (2d Cir.1958) in the face of its rejection by the Supreme Court in *Kosak.* The *Mora* decision is a "mystery," *see Garnay, Inc. v. M/V Lindo Maersk,* 816 F.Supp. 888, 897 (S.D.N.Y.1993), that can be explained only by concluding that the Second Circuit was unaware of the Supreme Court's *Kosak* decision. In fact, *Kosak* expressly criticized and rejected the holding and reasoning in *Alliance* that the

Second Circuit in *Mora* quoted and relied upon. Notably, in *Garnay, Inc. v. M/V Lindo Maersk,* 816 F.Supp. 888, 896–97 (S.D.N.Y.1993), the Southern District of New York has held that the explicit rejection by *Kosak* of *Alliance* compels it to ignore *Mora* and to follow *Kosak:*

The Supreme Court's opinion in *Kosak* specifically rejects the Second Circuit's rationale and holding in [*Alliance* ] that . . .

the exception does not and was not intended to bar actions based on the negligent destruction, injury or loss of goods in the possession or control of the customs authorities . . . The conclusion is inescapable that it did not choose to bestow upon all such agencies general absolution from carelessness in handling property belonging to others.

In Kosak the Supreme Court singled out that language [quoted above from *Alliance* ] for a critical dissection:

We find the conclusion reached by petitioner and the Second Circuit far from 'inescapable.' The specificity of § 2680(c) suggests, if anything that Congress intended the former to be less encompassing than the latter.

In these circumstances, it is surprising to find the Second Circuit quoting the same language from *Alliance* in support of its conclusion in *Mora v. United States,* 955 F.2d 156, 160, that § 2680(c) did not apply to a tort claim brought by a prisoner who complained that the Drug Enforcement Agency had lost personal property seized when he was arrested. *Mora* quotes the discredited language from the *Alliance* but does not even mention *Kosak.*

However one may explain the mystery of *Mora,* I am bound by *Kosak,* and conclude that if the agents of the FBI

actual seizure of his proper was improper.

8. For example, such as where the goods depreciated during the period of their detention.

9. For an indepth discussion of the split in the circuits, involving the Fifth, Ninth, Second, and Eleventh Circuits, see *Kosak v. United States,* 465 U.S. 848, 851 n. 5, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984).

are 'law enforcement officer[s]' within the meaning of 2680(c), that section bars the asserted claim in tort for damage to the [property] during the FBI's sting operation-related detention ...

*Garnay, Inc. v. M/V Lindo Maersk,* 816 F.Supp. 888, 896–97 (S.D.N.Y.1993) (citations omitted).

The Supreme Court in *Kosak* did not address whether the language of § 2680(c) excepting the FTCA's waiver of sovereign immunity for claims arising out of the detention of goods by "any other law enforcement officer" applies to law enforcement officers of any other agency in addition to U.S. Customs. Thus far, however, seven Circuit Courts have read § 2680(c) as applying to the law enforcement officers who detain goods. *See Halverson v. United States,* 972 F.2d 654 (5th Cir.1992) (seizure of property by INS), *cert. denied,* 507 U.S. 925, 113 S.Ct. 1297, 122 L.Ed.2d 687 (1993); *Cheney v. United States,* 972 F.2d 247 (8th Cir.1992) (damages from release of title certificate by federal drug task force to third party); *Schlaebitz v. U.S. Department of Justice,* 924 F.2d 193 (11th Cir.1991) (U.S. Marshals Service's release of luggage); *Ysasi v. Rivkind,* 856 F.2d 1520 (Fed.Cir.1988) (INS's seizure of truck); *United States v. 2,116 Boxes of Boned Beef,* 726 F.2d 1481 (10th Cir.1984) (USDA attempted detention of beef was protected by § 2680(c)) *cert. denied,* 469 U.S. 825, 105 S.Ct. 105, 83 L.Ed.2d 49 (1984); *United States v. Lockheed L–188 Aircraft,* 656 F.2d 390 (9th Cir.1979) (FAA's seizure of aircraft); *United States v. 1500 Cases,* 249 F.2d 382 (7th Cir.1957) (FDA seizure of tomato paste for testing).

Only two circuits have read § 2680(c) narrowly to limit its reach to detention of goods in connection with enforcement of tax or customs duties. *See Bazuaye v. United States,* 83 F.3d 482 (C.A.D.C.1996) (postal officer who seized plaintiff's bail money was not an officer "acting under the authority of the tax or customs such that he would be eligible for indemnification under 28 U.S.C. § 2006"); *Kurinsky v. United States,* 33 F.3d 594 (6th Cir.1994) (FBI official's detention of goods was not

within § 2680(c) because § 2680(c) covers only those officers "acting in a tax or customs capacity"), *cert. denied,* 514 U.S. 1082, 115 S.Ct. 1793, 131 L.Ed.2d 721 (1995).

Significantly, in *Rufu v. United States,* 876 F.Supp. 400, 406 (E.D.N.Y.1994), the Eastern District of New York, relying upon *Garnay,* found that DEA agents are considered "law enforcement officers" within the meaning of § 2680(c). *See also Formula One Motors, Ltd. v. United States,* 777 F.2d 822, 823–24 (2d Cir.1985). This Court agrees. To quote the *Garnay* Court, "[i]f they are not, it is difficult to imagine who is." *Garnay, Inc. v. M/V/ Lindo Maersk,* 816 F.Supp. 888, 897 (S.D.N.Y.1993).

Thus, Chambers' claim would also be dismissed under the FTCA because it falls within the § 2680(c) exception to the FTCA.

Finally, the *Mora* court also has suggested that a Rule 41 motion should be liberally construed as a complaint under the FTCA. *Mora,* 955 F.2d at 160. Even if § 2680(c) did not bar relief under the FTCA, Chambers' petition here could not meet the requirements for a complaint under the FTCA. The movant would not be able to avail himself of that remedy in this case, because he failed to comply with the strict conditions precedent to maintaining an action under that Act.

In order to file an action under the FTCA, a claimant must have first presented an administrative claim with the appropriate federal agency, 28 U.S.C. § 2675(a), and that claim must be filed within two years after the tort occurred, 28 U.S.C. § 2401(b). A civil action on that claim must be filed within six months from the date of denial of that claim. *See* 28 U.S.C. § 2401(b). In the event the claim is not denied after it has been pending for six months, a movant may deem the claim to have been finally denied and file an action at any time thereafter. *See* 28 U.S.C. § 2675(a).

In this case, Chambers has never filed any administrative claims with the DEA for the negligent loss or destruction of his property. Since more than two years have elapsed since he knew or should have known that the property was destroyed, as measured from the date the DEA informed him that it could not return the property, the statute of limitations has run, and the claim is forever barred.

### CONCLUSION

For the foregoing reasons, the motion by the United States to dismiss the case is **GRANTED.**

An appropriate Order accompanies this Letter Opinion.

### *FINAL ORDER*

**THIS MATTER** having come before the Court pursuant to a Remand Order issued by the United States Court of Appeals for the Third Circuit; and, in accordance with said Remand Order, this Court having held a hearing on March 2, 2000; and defendant Ceverilo Chambers ("Chambers") having been notified via mail of the date of said hearing; and Chambers having failed to attend said hearing; and Chambers having failed to file any memoranda with the Court concerning the issues which were the subject of the Remand Order; and, as a result of said hearing, the United States having moved to dismiss the case; and Chambers having failed to file any memoranda with the Court in opposition to the motion by the United States to dismiss this case; and for the reasons stated more particularly in the Letter Opinion which accompanies this Order; and good cause having been shown,

**ORDERED** that the motion by the United States to dismiss the case is **GRANTED;** and it is further

**ORDERED** that this case is **CLOSED.**