Peter David McBEAN, Petitioner,

v.

UNITED STATES of America, Respondent.

No. 5:01CV0406.

United States District Court, N.D. Ohio, Eastern Division.

April 25, 2001.

---

Peter David McBean, White Deer, PA, for Petitioner.

Kathleen Lucille Midian, Office of the United States Attorney, Cleveland, OH, Samuel A Yannucci, Office of the U.S. Attorney, Akron, OH, for U.S.

## MEMORANDUM OPINION AND ORDER

DOWD, District Judge.

Before the Court is petitioner's Fed. R.Crim. R. 41(e) motion for return of property. The specific question raised by this case is whether, under Rule 41(e), a petitioner may seek and obtain compensation for property seized and wrongfully not returned by the government. The motion has been fully briefed. For the reasons set forth below, petitioner's motion is overruled because the Court concludes that Rule 41(e) provides no avenue for monetary relief in lieu of return of property.

## I. BACKGROUND

The petitioner, previously convicted and sentenced to a term of imprisonment in Case No. 5:93CR0237, filed a post conviction Criminal Rule 41(e) motion for the return of property that he alleges was seized from him in connection with his arrest in Miami, Florida on March 24, 1994. Subsequently, this Court directed that the motion be filed as a civil case. (*See* Doc. No. 15).

Petitioner's list of the property allegedly seized from him in Miami, Florida is attached as Appendix No. 1. In previous filings, local FBI officers have asserted by way of affidavit that the property described in Appendix No. 1 was not forwarded to Ohio where the petitioner was transported following his arrest.

Initially, in response to the petitioner's motion, FBI Special Agent Roger Charnesky, who is stationed in Akron, Ohio, filed an affidavit which stated in relevant part as follows:

> The results of the Affiant's file reviews revealed that on the date of Peter McBean's arrest, a consent search of the premises 18051 NW. 36th Avenue, Miami, Florida, was conducted by the FBI and that only miscellaneous documents and photographs belonging to Peter McBean were seized.[1] No other items were seized or otherwise obtained by the FBI from Peter McBean either on that day or any other day in South Florida or in the Northern District of Ohio.

---

[1] The seized items, which were contained in three envelopes (approximately 9″ by 6″), were forwarded to the Cleveland FBI division

by the Miami FBI division as potential evidence in April of 1994.

(Doc. No. 2, Exh. A) (footnote in original).

Charnesky also revealed that the "miscellaneous documents and photographs" were destroyed on or about December 3, 1997. (Chamesky Aff. ¶ 7). However, the government does not contend that it provided notice to the petitioner prior to the destruction.

After this Court pointed out that the Charnesky affidavit did not address the petitioner's claims as to the conduct of the law enforcement officers in Miami, Florida at the time of the petitioner's arrest, the respondent filed the affidavit of FBI Special Agent Todd B. Cox, which indicated personal knowledge as to the search of the petitioner's residence at the time of his arrest. Special Agent Cox stated:

In April, 1994, while assigned to the Miami Field Office, I participated in the arrest of Peter David McBean, and also participated in the subsequent consensual search of McBean's residence, 18051 NW 36th Avenue, Miami, Florida.

Your Affiant, who personally was at 18051 NW 36th Avenue, Miami, Florida, during the time of the search, states that the only items seized from the residence were miscellaneous documents and photographs, all of which were placed in three separate FBI, 1A envelopes, 6″ × 9″ in size. Your Affiant further completed the administrative portion of the 1A envelopes and placed them in the FBI files for safekeeping. Your Affiant states that no further evidence or property was seized by FBI personnel from McBean's residence, 18051 NW 36th Avenue, Miami, Florida, in April, 1994.

(Doc. No. 5, Exh. A).

## II. DISCUSSION

█ Motions by a defendant for the return of property after the termination of a criminal proceeding are to be treated as civil proceedings for equitable relief. *United States v. Martinez*, 241 F.3d 1329 (11th Cir.2001); *United States v. Duncan*, 918 F.2d 647, 654 (6th Cir.1990), *cert. denied*, 500 U.S. 933, 111 S.Ct. 2055, 114 L.Ed.2d 461 (1991).

In the exercise of its equitable jurisdiction and in light of the factual dispute as to whether the property alleged by the petitioner was actually seized, the Court extended to the petitioner the opportunity to provide some particulars with respect to the alleged seizure. Specifically, the Court's order of February 20, 2001 (Doc. No. 8) declared:

Before taking any further action in this case, the petitioner shall have leave until April 2, 2001 to supplement his Rule 41(e) motion with relevant affidavits, by either the petitioner or anyone else of his choosing, to establish that the items identified by the petitioner were seized by federal law enforcement authorities and constituted his property.

The petitioner's response (Doc. No. 12) was filed on April 9, 2001, although signed by the petitioner on April 2, 2001, and states in relevant part as follows:

May it please the Court to note that the Government in its response to Petitioner's motion for return of property seized has stated emphatically that it did not seize 'any' property whatsoever as stated by Petitioner in his four page inventory.

The Government then acknowledges that a limited amount of miscellaneous papers and photographs, "not set out" in Petitioner's four page inventory, were obtained from a Miami, Florida home in which Petitioner apparently resided. The Government further states that the said items are not available for return

and there is no legal or equitable basis for Petitioner to obtain reimbursement or monetary damages for said items, (which have no intrinsic value in any event). The F.B.I. has also declared that the aforementioned items were destroyed on or about December 3, 1997.

Petitioner now states that the Government is in error in the following respect.

1. On page (5) of the itemized seized property, listed, item ZO. clearly states the type of bag and its cost with the said contents therein, disproving the Government's claim that such was not mentioned in the original claim. Please see Exhibit "A" attached hereto.

\* \* \* \* \* \*

In concluding the photos and numerous miscellaneous documents that the Government seized is clearly acknowledged and documented. That the items were of no intrinsic value was also an erroneous assumption by the Government due to the value of several of the photos and documents (over forty-five thousand [$45,000.00.] dollars) which would have been bourne-out by various receipts and invoices intentionally destroyed by the Government agents even after informal attempts to recover same. See Affidavit attached as Exhibit "B."

\* \* \* \* \* \*

Claimant was firmly under the impression that his photos and numerous miscellaneous papers would have been restored to him at the conclusion of criminal proceedings against him by way of his informal attempts to recover same. After years with no positive response to his attempts, he filed for his return of seized property.

Petitioner became aware of the destruction of said property by of agent Roger J. Charnesky's affidavit submitted with the Government's response dated February 15, 2000 to Petitioner claim with no prior notification whatsoever of such intent.

The only affidavit filed by the petitioner was that of Derek Fromby of Akron, Ohio (Doc. No. 12, Exh. B), and it stated in its entirety as follows:

> I, DEREK FROMBY, do hereby attest to the foregoing statement as factual and true.

> Several months after the trial and conviction of PETER D. McBEAN, he contacted me by way of telephone to request that I informally contact F.B.I. agent Keith Thornton to request the return of photographs and items seized from me and those taken from Peter McBean's residence in Miami, Florida. I initiated this request on at least three (3) or more occasions by telephone with Mr. Thornton to regain possession of the photos and items, to no avail, on occasion being told to be patient as there was still an ongoing investigation and the matter was not yet fully concluded, long after the trial. This went on for about two or three years after which time I just gave up after the various evasive excuses.

> The aforementioned [sic] statement is a true and fair recollection of my informal attempt to regain possession of the photos and items pertaining to and belonging to Peter D. McBean from F.B.I. agent Keith Thornton.

▮ The petitioner has failed to file any affidavit or documents to support the challenged claim that law enforcement officers in Miami, Florida, on the occasion of the petitioner's arrest on March 24, 1994, seized the various items of personal property as set forth on Appendix No. 1.

The Court finds that the petitioner has abandoned the claim that officers of the federal government seized, or in any man-

ner controlled a seizure and retention of, the items of property set forth on the four page list other than the items described as "item ZO."

Consequently, in the exercise of its equitable jurisdiction, the Court overrules the petitioner's motion with respect to his claim for all items described in Appendix No. 1, *except* the "93 photographs" described in ZO.

■ Remaining for resolution is the appropriate judicial response, exercising equitable jurisdiction, as to the "miscellaneous documents and photographs" that the government concedes it destroyed and for which the petitioner claims a monetary loss in the sum of $45,000.00.

It seems apparent that, were the Court to order a return of the items described as destroyed by the FBI, there would be an inability of the government to comply with such an order. What remains is the question of whether the Court has the power in the exercise of its equitable jurisdiction to determine a value for the personal property destroyed and order the government to reimburse the petitioner based on a judicial determination of that value. This issue has never been addressed by the Sixth Circuit. Rulings of other courts provide some guidance.

In *U.S. v. Chambers*, 92 F.Supp.2d 396 (D.N.J.2000), *on remand from* 192 F.3d 374 (3d Cir.1999), the District of New Jersey discussed the availability of remedies in the event it could be shown that the government had improperly disposed of property.[1] The district court noted the Third Circuit's directive to treat the motion for return of property "as a civil proceeding for equitable relief." *Id.* at 399 (quoting 192 F.3d at 376). It then pointed out that "some courts have suggested that a court under Rule 41(e) has power to award damages incident to the complaint[,]" 92 F.Supp.2d at 399 (internal quotation marks omitted) (citing cases from the Ninth, Fourth, and Second Circuits), while "[o]ther courts have disagreed." *Id.* (citing cases from the Fifth Circuit and three district courts). Discussing the concept of sovereign immunity, the district court concluded that "the two avenues available to satisfy a claim against the United States for negligent disposition of property are the Administrative Procedures Act ... and, for breaches of common law tort duties, the Federal Tort Claims Act...." *Id.* It further determined that money damages are not available under the APA[2] and sovereign immunity bars relief under the FTCA.[3] *See also Dept. of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260–63, 119 S.Ct. 687, 142 L.Ed.2d 718 (1999) (there is no waiver of sovereign immunity where money is being sought as a form of substitute, not specific, relief for a loss).

In *U.S. v. Bein*, 214 F.3d 408 (3d Cir. 2000), *petition for cert. filed,* 69 U.S.L.W.

---

1. *Chambers* involved a Rule 41(e) motion filed after conviction and sentencing, seeking return of property that had not been administratively forfeited but which was, purportedly, either already returned or otherwise disposed of by the government.

2. A 1976 amendment to the APA effected a limited waiver of sovereign immunity for claims seeking relief "other than money damages." 5 U.S.C. § 702. "Because monetary relief in lieu of the return of Chambers' property would constitute 'money damages,'

Chambers' motion for return of his property would have to be dismissed." 92 F.Supp.2d at 400.

3. The district court pointed to the specific exception in the FTCA, 28 U.S.C. § 2680(c), which provides that the waiver of sovereign immunity shall not apply to "[a]ny claim arising in respect of ... the detention of goods or merchandise by any officer of customs or excise or any other law-enforcement officer."

3646 (U.S. Mar 15, 2001) (No. 00–1469), the Third Circuit also dealt with the question of seeking money damages under Rule 41(e). There, Esther and William Bein pleaded guilty to conspiracy to commit interstate transportation of stolen property and conspiracy to launder money. Following sentencing, the government was ordered to return non-contraband property of the Beins which it had seized pursuant to search warrants executed at the time of their arrest. Many items were returned but, according to the Beins, the government also destroyed many non-contraband items and, thus, did not return them. The Beins sought monetary damages to compensate them for their loss. The district court did award money damages for property which the Beins had proven was in the government's possession, was non-contraband, and had been destroyed and not returned. On appeal, the court examined the case law developing around the question of damages. It concluded: "After careful analysis we reject the cases which allow an award of damages in a proceeding under Rule 41(e) as we conclude that a Federal Rule of Criminal Procedure that does not expressly provide for an award of monetary damages does not waive sovereign immunity." *Id.* at 413. In reaching this conclusion, the Third Circuit found persuasive the decision in *Pena v. United States*, 157 F.3d 984 (5th Cir.1998) and also referred to *Chambers* (on remand). The Third Circuit stated emphatically "that

Rule 41(e) provides for one specific remedy—the return of property." 214 F.3d at 415.

In the instant case, only miscellaneous documents and photographs belonging to McBean were seized on March 24, 1994, incident to his arrest. These were "placed in three separate FBI, 1A envelopes, 6″ by 9″ in size[ ] ... [and] placed ... in the FBI files for safekeeping." (Cox Aff. ¶ 3, Doc. No. 5, Exh. A; *see also,* Exh. B). These items were subsequently "forwarded to the Cleveland FBI division by the Miami FBI division as potential evidence in April of 1994." (Charnesky Aff. ¶ 6, n. 1, Doc. No. 5, Exh. C). They were "destroyed on or about December 3, 1997[,]" apparently without notice to McBean. (*Id.*).

McBean has offered no proof that any of the "miscellaneous documents and photographs" had *any* monetary value. Absent such proof, McBean would not be entitled to an order directing monetary relief under Rule 41(e), even if such relief were available.

■ In addition, this Court concludes that any claim for money damages under Rule 41(e) is barred by the doctrine of sovereign immunity. Federal courts do not have jurisdiction over suits against the United States unless Congress, by statute, expressly waives sovereign immunity.[4]

---

4. In view of the specific exception contained in 28 U.S.C. § 2680(c), *see* n. 3, *supra,* even the Federal Tort Claims Act (FTCA) would probably provide no relief for McBean. Further, it appears that McBean's claim would be time-barred in *any* event.

By letter dated April 26, 1994, the government notified McBean, through his counsel's discovery request, that it possessed "three packets of photographs" belonging to McBean. *See* Doc. No. 5, Exhibit D. The affidavit of Derek Fromby filed by McBean in this action indicates that McBean knew the FBI had these photos and asked Fromby, "several months after the trial and conviction," to telephone FBI Agent Thornton to request their return. When this request proved unsuccessful, the onus was on McBean to begin proceedings under the FTCA. Proper procedure would have required that he first present his claim to the appropriate agency within two years. He could have filed a civil action only after the agency actually denied the claim or rendered it denied by six months of inaction. *See* 28 U.S.C. §§ 2401(b) and 2675(a).

Rule 41(e) is a rule of criminal procedure, not a statutory waiver of immunity.[5]

## III. CONCLUSION

For the reasons set forth above, petitioner's motion for return of property is overruled and this case is dismissed with prejudice.

IT IS SO ORDERED.

*JUDGMENT ENTRY*

For the reasons set forth in the Memorandum Opinion and Order filed contemporaneously with this Judgment Entry, IT IS HEREBY ORDERED, ADJUDGED and DECREED that the petition for return of property filed pursuant to Fed.R.Crim.P. 41(e) is overruled and the case is dismissed with prejudice, each party to bear its own costs.

### APPENDIX NO. 1
### PROPERTY SEIZED

| | | VALUE OF ITEM |
|---|---|---|
| a. | 1 Men's Hamilton Chronograph on s/s Bracelet w/gold bezel | $ 527.00 |
| b. | 1 Men's Hammered–Links Sterling Silver Bracelet | $ 275.00 |
| c. | 1 New Med. Rubbermaid Hard–Poly Tool Box w/contents (new and used tools listed below) | $ 25.00 |

The Following new/used tools were the contents of the Medium Rubbermaid Hard–Poly Tool Box:

| | | |
|---|---|---|
| 1. | **Stanley Carpet Knife w/blades** | $ 5.00 |
| 2. | **X–Acto Utility Knives w/blades (1 molded plastic 3.50 and 1 cast metal 5.25** | $ 8.75 |
| 3. | **20 oz. Estwing Framing Hammer** | $ 23.00 |
| 4. | **16 oz. Stanley Claw Hammer (yellow fiberglass handle w/grey rubber grip** | $ 14.50 |
| 5. | **Rafter Square/Aluminuim** | $ 5.00 |
| 6. | **Large Set of miniature screwdrivers/nutdrivers in hard plastic case** | $ 12.00 |
| 7. | **Vise-grip locking pliers kit (5″ curved jaw, 6″ long nose; 7″ curved jaw)** | $ 35.00 |
| 8. | **Large 4–in–1 Screwdriver** | $ 7.95 |
| 9. | **Two (2) Stanley 25′ Hi–Vis Leverlock Tape Measure at** | $ 30.00 |

**5.** The Court also notes that McBean's Rule 41(e) motion was not properly served upon the United States under the provisions of Fed. R.Civ.P. 4(i)(1)(A) and (B), which requires either personal service or service by registered or certified mail upon both the U.S. Attorney for the Northern District of Ohio and the Attorney General of the United States. Thus, even if the motion had merit, which it does not, there would be no personal jurisdiction.

## PROPERTY SEIZED

| | | VALUE OF ITEM |
|---|---|---|
| 10. | Two (2) Off–Set Screw-drivers (1 large set cost $4.25, and 1 small set cost $2.95) | $ 7.20 |
| 11. | Two Bondhus Ball End–L–Key Sets (13 pc. inch at $15.00 and 9 pc. metric at $12.00) | $ 27.00 |
| 12. | Folding Hex Key Set | $ 5.95 |
| 13. | Folding Torx Key Set | $ 9.85 |
| 14. | X–Acto Knife Set (heavy, medium and light duty handles w/10 blade assortment) | $ 11.50 |
| 14A. | SMALL 4–IN–1 SCREWDRIVER | $ 4.95 |
| 15. | Craftsman 6″ Adjustable Wrench | $ 11.95 |
| 16. | Stanley 9″ Torpedo Level | $ 11.50 |
| 17. | Set Craftsman Pro Pliers (1 Needle Nose, 1 Slip Joint, 1 Groove Joint and 1 Diagonal Cutter | $ 28.00 |
| 18. | Brass Pin Vise w/mini Drill Bits (12 assorted bits) | $ 15.00 |
| 19. | 4 Piece Double Ended Probe Set | $ 20.00 |
| 20. | 12 Piece Needle File Kit | $ 36.00 |
| 21. | 3 Prong Parts Holder | $ 5.25 |
| 22. | All Purpose Hemostat Set; 4 pieces ( 2 straight; 2 curved) | $ 18.00 |
| 23. | 6 Piece Precision Stainless Steel Tweezers | $ 45.00 |
| 24. | Stripper/Cutter/Crimper–Cable & Wire Tool | $ 13.50 |
| 25. | Two (2) Jeweler's Pocket Knife @$6.00 ea. | $ 12.00 |
| 26. | Black & Decker Heavy Duty Staple Gun | $ 21.00 |

**End of Contents of Rubbermaid Tool Box.**

| | | |
|---|---|---|
| d. | 1 Pair Chocolate Brown Elephant Skin Cowboy Boots (Brand New/Rios of Mercedes) | $ 485.00 |
| e. | 1 Pair Black Red Elephant Skin Cowboy Boots (Brand New/Rios of Merceds) | $ 375.00 |
| f. | 1 Pair Light Brown & Burgundy Kangaroo Skin Cowboy Boots (Brand New/Lucchese) | $ 465.00 |
| g. | 1 Pair Black Shark Skin Cowboy Boots (Brand New/Dan Post) | $ 390.00 |
| h. | 1 Pair Biege & Brown Hooded Cobra Skin Cowboy Boots (Brand New/Imperial) | $ 495.00 |

## PROPERTY SEIZED

| | | VALUE OF ITEM |
|---|---|---|
| i. | 1 Pair Chocolate Brown Lizard Skin Cowboy Boots (Brand New/Dan Post) | $ 390.00 |
| j. | 1 Pair Burgundy & Black Ostrick Skin Cowboy Boots (Brand New/Justin) | $ 730.00 |
| k. | 1 Pair Green/Blue & Black Calf Skin Cowboy Boots (Brand New/Rocket | $ 340.00 |
| l. | 1 Pair Red Toe & Heel Cap/Lizard on black Calf Skin Cowboy Boots (Brand New/Tony Lama) | $ 380.00 |
| m. | 1 Pair Black Calfskin Cowboy Boots w/Fancy Stitching (Brand New/Rios of Mercedes) | $ 355.00 |
| n. | 1 Pair Blue & Cognac Calfskin Cowboy Boots (Brand New) | $ 350.00 |
| o. | 1 Pair Tan Calfskin Harness Boots (Brand New/Code West) | $ 245.00 |
| p. | 1 Pair Black Calfskin Harness Boots (Brand New/Code West) | $ 185.00 |
| q. | 1 Pair Black Calfskin Harness Boots (Brand New/Frye) | $ 365.00 |
| r. | 1 Pair Black Calfskin Boots (Brand New/Brass Boot) | $ 265.00 |
| s. | 1 Pair Burgundy Calfskin Boots (Brand New/Brass Boot) | $ 265.00 |
| t. | 1 Pair Dark Brown & Biege Python Cowboy Boots (Brand New/Justin) | $ 345.00 |
| u. | 1 Pair Black Men's Loafers w/Tassles (Brand New/Steeple Gate) | $ 220.00 |
| v. | 1 Pair Black–Brown Men's Loafers w/Tassles (Brand New/Steeple Gate) | $ 220.00 |
| w. | 1 Pair Brown Men's Calfskin Penny Loafers (Brand New/Johnston & Murphy) | $ 165.00 |
| x. | 1 Pair Black Men's Calfskin Loafers w/Tassles (Brand New/ Bally) | $ 300.00 |
| y. | 1 Pair Light Tan Men's Casual Lace-up Walkers (Brand New/Clark's) | $ 115.00 |
| z. | 3 Denim Jackets | $ 250.00 |
| za. | 15 pairs Assorted Denim Jeans | $ 900.00 |
| zb. | 12 Assorted Denim Shirts | $ 600.00 |
| zc. | 20 Assorted Cotton Shirts | $ 1,000.00 |
| zd. | 10 Silk Shirts | $ 600.00 |
| ze. | 12 Linen Shirts | $ 840.00 |
| zf. | 12 pairs Linen PAHTS | $ 1,000.00 |
| zg. | 15 pairs Cotton Twill Pants | $ 750.00 |
| zh. | 25 pairs Assorted Socks | $ 250.00 |

### PROPERTY SEIZED

| | | VALUE OF ITEM |
|---|---|---|
| zi. | 25 Assorted Briefs | $ 200.00 |
| zj. | 12 Assorted Sports Shorts | $ 175.00 |
| zk. | 15 Assorted Sports Jerseys | $ 200.00 |
| zl. | 15 pairs Assorted Soccer Socks | $ 150.00 |
| zm. | 4 pairs Soccer Boots | $ 460.00 |
| zn. | 1 Large Blue & Gold Adidas Sport Cordura Duffle Bag w/personal effects | $ 400.00 |
| zo. | 1 Large Black Tumi Leather Duffle Bag w/personal effects (93 Photographs) | $ 700.00 |
| zp. | 1 Casio Pocket Calculator | $ 9.00 |
| zq. | 1 Sharp Engineers Pocket Calculator | $ 15.00 |
| zr. | 1 Brown Leather/Green Canvas Pouch (Brand New/Cockpit) | $ 65.00 |
| zs. | 1 Sterling Silver Hand Engraved Business Card Case | $ 160.00 |

TOTAL= **$17,440.00**